### In re Alan BORBIDGE and Terry Borbidge, Debtors.

### Murray S. ECKEL, Esquire, Guardian of Sally Borbidge, an Incompetent, Plaintiff,

v.

### Alan & Terry BORBIDGE and Leo Doyle, Esquire, Trustee, Defendants.

### Bankruptcy No. 86–05939F. Adv. No. 87–0874F.

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 30, 1988.

---

Eduardo C. Robreno, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for plaintiff, Murray S. Eckel, Guardian of Sally Borbidge, an incompetent.

Richard H. Anderson, Media, Pa., for defendants, Alan & Terry Borbidge.

Leo F. Doyle, Philadelphia, Pa., defendant/trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

This proceeding has been brought by the state court appointed guardian for Sally Borbidge, the husband/debtor's mother, seeking to have a debt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4) for fraud or defalcation in a fiduciary capacity.

### I.

Following the close of plaintiff's case, the defendants moved for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b) (as made applicable by Bankr.Rule 7041) arguing that the plaintiff had failed to present sufficient evidence of an express trust and that the absence of such proof was fatal to the plaintiff's case. I took the motion under advisement and prior to defendants' case-in-chief, I issued a memorandum and order denying the motion for involuntary dismissal. *In re Borbidge*, Bankr. No. 86–05939F, Adv. No. 87–0874F *unpublished mem.* (Bankr.E.D.Pa. April 6, 1988). Although I concluded, as a legal matter, that evidence of an express trust is essential to plaintiff's case, I determined that, subject to the defendants' rebuttal in their case-in-chief, the evidence presented in the plaintiff's case-in-chief was sufficient to make out the existence of an express trust created by Mrs. Sally Borbidge for her own benefit with the defendants acting as trustees. *In re Borbidge, unpublished mem.* at 6–7. To the extent relevant, I will incorporate my prior unpublished memorandum here.

One further preliminary matter resolved during trial involved the effect of plaintiff's late responses to the defendants' request for admissions. Since plaintiff's responses were not served until after expiration of the 30 day period for responses set out in Fed.R.Civ.P. 36(a), the defendants sought at trial to have the defaulted admissions made part of the record.[1] Upon review of the case law and Rule 36(b), I granted the plaintiff's request that the late filed responses be treated as a withdrawal or amendment of the defaulted admissions.

I concluded that plaintiff's failure to timely respond was not willful and that permitting amendment by allowing the late filed response would not prejudice the defendants within the meaning of Rule 36(b). *See Brook Village North Associates v. General Electric Co.*, 686 F.2d 66 (1st Cir. 1982); *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309 (8th Cir.1983). *See also* 4A *Moore's Federal Practice* ¶ 36.05[4] at p. 36–53 to 36–56. The major issue on which defendants sought to offer the admissions was the competence of Sally Borbidge at the time of the transactions at issue. At trial, both parties agreed that it would be plaintiff's burden to establish lack of competence to the extent it was an element of his case. If plaintiff carried his burden and defendants were forced to present evidence on that point, I left open the possibility of fee shifting as a sanction for the late responses.[2]

Having resolved those issues during trial,[3] I now make the following findings of fact and conclusions of law on the merits of this proceeding.

### II.

FINDINGS OF FACT:

1. The plaintiff in this matter is Murray Eckel, Esquire, the state court appointed guardian for Sally Borbidge. Mrs. Bor-

---

**1.** I note that absent amendment or withdrawal of the defaulted admissions pursuant to Rule 36(b), they would be conclusive as to all facts admitted. *See Airco Industrial Gases, Inc. v. Teamsters Health and Welfare Pension Fund*, 850 F.2d 1028 (3rd Cir.1988).

**2.** Ultimately, no evidence was offered on this point by the plaintiff and the issue of the effect of the admissions, at least insofar as the ques-

tion of Sally Borbidge's competence, has become irrelevant.

**3.** *See also In re Borbidge*, 81 B.R. 332 (Bankr.E.D.Pa.1988) on the pretrial request of the plaintiff for relief from the automatic stay to file an action against the debtors in state court for breach of fiduciary duty. That motion was denied.

bidge was adjudicated incompetent on August 17, 1987, a date significantly after the events complained of in this proceeding.

2. The defendants in this case are the debtors, Alan and Terry Borbidge.[4] Alan and Terry Borbidge are married and reside at the same address. Sally Borbidge is Alan Borbidge's mother. (For the purposes of clarity, Mr. Eckel will be referred to as "plaintiff"; Sally Borbidge will be referred to as "Sally Borbidge" and Alan and Terry Borbidge will be referred to collectively as "defendants" or individually as "Alan" or "Terry".)

3. In August, 1979, Sally Borbidge's husband (Alan Borbidge's father), George Borbidge, died. A federal estate tax return for George Borbidge filed in May, 1980 indicates that he left a gross estate in excess of $350,000.00 to Sally Borbidge. (Ex. D–5). At that time Sally Borbidge owned additional property which did not pass through the estate of her husband.

4. In addition to Alan and Sally, George Borbidge was survived by a son, Donald Borbidge and a daughter, Lynne DiLullo DiCaprio.

5. During 1981, Alan returned to the Philadelphia area after having resided in Florida. Upon his return he lived for a brief period with Sally Borbidge. In late 1981, he married Terry and they moved to their own residence.

6. Upon his return from Florida, Alan, who had some accounting experience, became involved in assisting his mother in her financial affairs, including but not limited to preparing her tax returns.

7. During the period from 1980 to 1983 it gradually came to Alan's attention that his sister Lynne was obtaining property of various kinds from Sally Borbidge's estate. It was Alan's belief that the property taken by Lynne exceeded $500,000.00 in value. (N.T. 2/29/88 pp. 5–6; 4/18/88 pp. 8–9).

8. During 1982 and 1983 Alan Borbidge came to believe that his mother's estate should be protected from Lynne. (N.T. 2/29/88 p. 7). During 1983, Alan convinced Sally Borbidge to place certain assets in safekeeping to prevent Lynne from reaching them. (N.T. 2/29/88 pp. 7–8; 4/18/88 pp. 80–81). Alan and Terry then participated in a plan by which Alan would control certain of Sally Borbidge's assets for Sally's benefit to safeguard them from Lynne.[5] Sally Borbidge expressly consented to this plan. *Id.*

9. As to Sally Borbidge's residential real estate, a written declaration of trust was prepared in April, 1984 and the property was transferred in August, 1984 to Alan and Donald. (Ex. D–11, N.T. 2/29/88 pp. 12, 13, 77, 109).

10. Between 1983 and 1986, Sally Borbidge issued more than 50 checks to Alan and/or Terry Borbidge in the total amount of $27,048.22.[6] (Joint pretrial statement, paragraph 8). Of these, many checks were signed by Sally Borbidge but the payee and/or amount were filled in by Alan. (N.T. 2/29/88 pp. 23–25; 3/9/88 pp. 3–4). At least one check was filled out by Sally Borbidge for $100.00 and then altered by Alan Borbidge and cashed for $3,100.00. (# 162A; *see* N.T. 2/29/88 p. 24).

11. In 1985 and 1986, Alan Borbidge used Sally Borbidge's MAC card to withdraw $24,490.00 in cash from her account. (Joint pretrial statement, para. 9).

12. On about June 21, 1984, Sally Borbidge deposited $61,243.10 into a certificate of deposit jointly held by her with Alan. That certificate was later redeemed and Alan Borbidge received the proceeds. (Joint-pretrial statement, paras. 10, 11).

13. In 1986, an additional certificate of deposit held jointly by Sally and Donald was redeemed and Alan received $9,990.00 of the proceeds. (*See* joint-pretrial statement, para. 12).

---

**4.** Alan Borbidge is apparently also known as Michael Borbidge and is frequently referred to in the pleadings and transcripts by that name.

**5.** The evidence presented suggests that Donald Borbidge also participated in this plan. Be-

cause he is not a party to this matter, I make no findings or conclusions with respect to Donald.

**6.** Of this total, checks in the amount of $12,-810.19 were made payable to Terry Borbidge alone.

14. During the latter part of 1983 Sally Borbidge redeemed various certificates of deposit and reinvested them. During these transactions $22,423.19 was deposited into accounts owned by Alan and/or Terry. (N.T. 2/29/88 pp. 31–34).

15. Between 1983 and 1986, Alan and/or Terry Borbidge received funds in the total amount of $145,194.61 from Sally Borbidge's estate. When combined with other transfers to various family members which are not at issue here,[7] Sally Borbidge was rendered virtually impecunious.[8]

16. Alan Borbidge testified that most of the money he and Terry received was either intended as a gift by his mother or was used for her benefit. Some of this testimony was not credible.

17. Much of Alan Borbidge's testimony was directed at establishing that he received certain funds from his mother to equalize gifts received by his sister, Lynne, or his brother, Donald. Ultimately, this testimony suggests that Alan took control of his mother's various assets, and did not use them for her benefit as was agreed, but rather for his own benefit to equalize a perceived inequality in *inter vivos* distribution of the estate.

18. No gift tax returns were filed in connection with any transfer.

19. Alan Borbidge's testimony that his mother made him a gift of the principal of the $61,000.00 certificate of deposit, but required interest payments which he made monthly until his mother forgave the interest as a gift, was not credible. First, his testimony about the interest was inconsistent with his deposition testimony. (N.T. 4/18/88 p. 59). Additionally, the plaintiff adduced testimony which strongly suggests that the defendants lacked the financial ability to have made the interest payments in question. (N.T. 4/18/88 pp. 51–55). Ultimately the defendants' conduct in making interest payments, if true, is consistent with a loan rather than a gift. If a loan was intended, then the proceeds of the loan were appropriated by Alan. (*See* N.T. 4/18/88 pp. 43–45).

20. Alan Borbidge's testimony that he gave his mother more than $11,000.00 in cash between 1984 and 1986 was not credible given testimony that Sally Borbidge seldom went out, and that she had no reason or opportunity to pay bills with cash.[9] (N.T. 2/29/88 pp. 20, 43, 44–45). I accept that Sally received cash in the amount of $1,430.00 for the 14 checks on which she wrote "cash" in the memo portion of the check. Based on the testimony of Sally Borbidge's activities during the relevant years, I also credit her with receiving $6,122.50 or one quarter of the cash which Alan obtained with Sally's MAC card.

22. Alan Borbidge's testimony that he deposited money in his mother's account to offset cash he admits he retained was not credible given that he was asked on direct examination in plaintiff's case-in-chief for corroborating bank records and could not produce them because they were not in court. Nevertheless nearly two months later on cross-examination during his own case-in-chief, he again claimed that he had left his corroborating evidence at home. (N.T. 2/29/88 p. 28, 4/18/88 p. 71). Moreover, Alan Borbidge's own testimony suggests that he did not have the financial ability to make the payments he alleges. (N.T. 4/18/88 pp. 51–56).

23. Alan Borbidge's testimony that he used thousands of dollars to purchase sundries for his mother including "soda and mints and things of that nature" was not credible. (N.T. 4/18/88 pp. 66–67). That Alan supplied sundries to his mother, if true, undercuts his testimony that she kept large amounts of cash around the house to pay incidental expenses.

24. Alan and Terry Borbidge did pay some of the real estate and school taxes on

7. The plaintiff is pursuing other family members in other forums. *See In re Borbidge,* 81 B.R. 332 (Bankr.E.D.Pa.1988).

8. Mrs. Borbidge is currently in a nursing home. The house, which had been held in trust for her by Alan and Donald (*see* finding # 9), was sold to pay nursing home expenses.

9. There was no mortgage on the residential property. Taxes were paid by Alan and will be discussed below.

Sally Borbidge's residence. Sally Borbidge issued 4 checks in the total amount of $2,304.63 to reimburse them.

25. One check entered into evidence by the plaintiff in the amount of $698.22 was paid to Donald Borbidge and is not chargeable to the defendants. (# 158A).

26. Alan and Terry Borbidge did pay $300.00 toward repair of Sally Borbidge's car which was reimbursed in the form of three $100.00 checks.

27. Sally Borbidge issued 3 checks to the defendants in the total amount of $4,927.35, for the alleged purpose of reimbursing the defendants for personal income taxes which the defendants paid by reason of certain assets being held in their name. (N.T. 4/18/88 pp. 74–76). Given that the defendants ultimately used those assets as their own, they were not entitled to charge Mrs. Borbidge for the taxes on those assets, if any.

28. There was insufficient evidence to establish that any sum was given by Mrs. Borbidge to the defendants as a gift.

### CONCLUSIONS OF LAW

1. Under 11 U.S.C. § 523(a)(4) fraud in a fiduciary capacity must be proved by clear and convincing evidence. Defalcation in a fiduciary capacity, since it involves no imputation of wrongful conduct, may be proved by a preponderance of the evidence.

2. Section 523(a)(4) requires proof of the existence of an express trust. Under Pennsylvania law an express trust must be proved by evidence which is clear, precise and unambiguous.

3. The plaintiff proved by the requisite evidence that Alan Borbidge was trustee of an express trust created by Sally Borbidge for her own benefit to protect her assets from Lynne DiCaprio, Alan's sister.

4. Although Terry Borbidge benefitted from Alan's defalcations, insufficient evidence was presented to establish that Terry was a fiduciary by express trust in favor of Sally Borbidge. Consequently, judgment must be entered in favor of defendant Terry Borbidge.

5. The trustee established by clear and convincing evidence that Alan obtained $145,194.61 from the corpus of the trust, either by payments to him or his wife.

6. To the extent that a trustee retains proceeds from the trust corpus, the trustee has the burden of proof to establish that the proceeds were given as a gift or in repayment for services provided to the beneficiary of the trust.

7. Insufficient evidence was presented to establish that Sally Borbidge intended a gift to Alan or Terry of any portion of the trust proceeds.

8. The defendants established that $10,855.35 of the money they received from the trust corpus was received in exchange for benefits obtained by Sally Borbidge.

9. Defendant Alan Borbidge has a debt to the plaintiff in the amount of $134,339.26 which is nondischargeable by virtue of 11 U.S.C. § 523(a)(4) for fraud or defalcation in a fiduciary capacity.

### III.

### DISCUSSION

 This is a dischargeability proceeding brought exclusively pursuant to 11 U.S.C. § 523(a)(4) for the fraud or defalcation of the defendants in a fiduciary capacity. As I reiterated recently in *In re Napoli*, 82 B.R. 378, 381 (Bankr.E.D.Pa.1988) *quoting In re Salamone*, 78 B.R. 74, 76 (Bankr.E.D.Pa.1987):

> 11 U.S.C. § 523(a)(4) provides for the nondischargeability of any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Collier explains that section 523(a)(4) creates an exception based on (1) fraud or defalcation while acting in a fiduciary capacity or (2) embezzlement or larceny while not acting in a fiduciary capacity. 3 *Collier on Bankruptcy* 523.-14 (15th ed. 1987) ("Collier"). *Accord, In re Kapnison*, 65 B.R. 221 (Bankr.D.N.M. 1986); *In re Talcott*, 29 B.R. 874 (Bankr.D.Kan.1983). Under the former ground, it is well established that the requirement that the debtor be acting in a fiduciary capacity refers to express trusts

and not trusts *ex maleficio* which may be imposed due to the very wrongful act out of which the debt arose. *In re Lane,* 76 B.R. 1016, 1022 (Bankr.E.D.Pa.1987); *In re Kapnison; In re Gould,* 65 B.R. 87 (Bankr.N.D.N.Y.1986); *In re Kwiat,* 62 B.R. 818 (Bankr.D.Mass.1986); 3 *Collier* ¶ 523.14[1] at 523–93 to 523–96.

Thus, the existence of a fiduciary relationship in the form of an express trust is a prerequisite to a determination of non-dischargeability for fraud or defalcation under section 523(a)(4). *Accord, In re Ramonat,* 82 B.R. 714 (Bankr.E.D.Pa.1988). It is the plaintiff who bears the burden of establishing the requisite fiduciary relationship. *In re Ramonat,* 82 B.R. at 718.

In several recent opinions, I have explored the quantum of proof necessary to establish plaintiff's case on issues related to discharge. In *In re Garcia,* 88 B.R. 695 (Bankr.E.D.Pa.1988), I examined the history of the use of a clear and convincing evidentiary standard for proof of fraud both in bankruptcy and out. When taken together with principles requiring strict construction of various dischargeability provisions in favor of the debtor's discharge, I have concluded that the history of requiring proof of fraud by clear and convincing evidence should be incorporated into the law regarding denial of discharge under section 727, *id.,* and under section 523(a)(2)(A). *In re Paolino,* 89 B.R. 453 (Bankr.E.D.Pa.1988). Most recently, in *In re Cobley,* 89 B.R. 446 (Bankr.E.D.Pa.1988), I examined the history of clear and convincing evidence as it applies to proof of willful and malicious injury under section 523(a)(6) and concluded that many of the same rationale which militate for clear and convincing evidence under section 523(a)(2)(A) apply under 523(a)(6).

■ In the case at bench, under section 523(a)(4) to the extent proof of fraud is required, the same rationale for an elevated standard applies. *See Garcia* at 701–02. However, because defalcation requires no allegation of dishonest conduct, but may arise from negligence or ignorance,[10] *see Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 512 (2d Cir.1937), proof of defalcation may be made by only a preponderance of the evidence. *See Kwiat v. Doucette,* 81 B.R. 184, 190 (D.Mass. 1987). To the extent the requirement of an elevated standard of proof is based on a reluctance to lightly conclude the debtor's moral turpitude, *see Kwiat,* 81 B.R. at 190; *Cobley* at 452–53, that rationale does not apply to proof of defalcation.

As stated above, however, it is the plaintiff's burden to establish an express trust. Since most trusts are created under state law, *but see, e.g., In re W.L. Bradley Co.,* 75 B.R. 505 (Bankr.E.D.Pa.1987), state law is relevant in determining whether an express trust exists. *See Kwiat,* 81 B.R. at 188. Under Pennsylvania law [11] the existence of an express trust must be proved by evidence which is "clear precise and unambiguous." [12] *In re Trbovich,* 488 Pa. 583, 413 A.2d 379, 380 (1980), *quoting In re Kerwin's Estate,* 371 Pa. 147, 89 A.2d 332 (1952). *Accord Keller v. Keller,* 351 Pa. 461, 41 A.2d 547, 549 (1945).[13]

■ I thus turn first to whether the plaintiff has established a trust by the req-

---

**10.** Non-dischargeability for defalcation under this traditional definition thus stands out among the traditional grounds for non-dischargeability under subsections 523(a)(2), (4) and (6) as it does not require proof of wrongful conduct. Perhaps the justification for this exception is the special duty of care which a fiduciary pursuant to an express trust owes to the trust's beneficiary.

**11.** The parties agree that Pennsylvania law applies.

**12.** I note again that it makes little sense for a debt founded on state law to "be found nondischargeable in bankruptcy on proof insufficient to establish the debt in state court." *Paolino,* slip op. at 462–463. *See also Cobley,* at 452, n. 8.

**13.** I note that at least in Pennsylvania, there is a nice symmetry under section 523(a)(4). The existence of a trust may require an elevated standard of proof, but defalcation must be proved by a preponderance. On the other hand to establish embezzlement, the parties' relationship need only be proved by a preponderance, but the debtor's misappropriation, which must be wrongful, need be established by clear and convincing evidence. *See Matter of Storms,* 28 B.R. 761 (Bankr.E.D.N.C.1983).

uisite degree of evidence and then to whether defalcation occurred.

In Pennsylvania, a trust concerning personal property may be oral, and its existence may be proved by adequate circumstantial evidence. The Supreme Court of Pennsylvania has stated:

> In reviewing the evidence to determine the existence of a trust, the situation of the settlor and the beneficiary, financial and otherwise, their relation to each other as well as the purpose for which the trust was created, and circumstances under which it is to be administered must be given due consideration. All the evidence and surrounding circumstances must be considered as an entirety; isolated facts and circumstances are ofttimes misleading and do not present a true picture.

*Keller*, 41 A.2d at 549. *Accord Wolf v. Calla*, 288 F.Supp. 891 (E.D.Pa.1968).

In *Trbovich*, 415 A.2d at 380, the court amplified upon *Keller*, stating:

> [W]hile the intent to create an express trust must be manifested by the settlor in order to create the trust relationship, the manifestation of that intent need not be in any particular form of words of language, provided that every element of a completed trust is present.

*Accord, In re Penn Central Transportation Co.*, 486 F.2d 519, 524 (3rd Cir.1973) (en banc) *cert. denied* 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974):

> The parties' manifestation of intention ultimately controls whether or not a trust relationship exists, but failure to expressly designate the relationship as one of trust does not necessarily negate its existence.... When the language of the parties fails to clearly indicate their intention, it may be ascertained by other objective manifestations of intent, such as the facts and circumstances surrounding the transaction and the relationship of the parties.

(citations omitted).

Here the testimony of Alan Borbidge supported plaintiff's position that a trust was created. As I noted in my unpublished memorandum, Alan's testimony during plaintiff's case-in-chief was to the effect that his mother gave him control and access to her assets to be exercised for her benefit in order to prevent her daughter, Lynne, from taking advantage of her. On direct examination of Alan Borbidge during plaintiff's case-in-chief, the following exchanges took place:

Q. And as a result of the concerns that you had that Lynn may be helping herself to your mother's estate, did you discuss this matter with your brother, Donald?

A. Yes, and my mother also brought up the fact that she knew money was missing only she didn't know how or why or where.

Q. And you had some concerns that you wanted to try to remove that property or those assets from the reach of Lynn and put them for safekeeping someplace where she could not get them?

A. No, that was not my idea.

Q. So notwithstanding the fact that you feared that Lynn was dipping into the—your mother's till, you did not remove those assets and place them for safekeeping someplace she could not get them?

A. Not until a later time.

Q. Now, for what period of time did you go until you placed the assets of your mother for safekeeping away from the reach of Lynn?

A. Shortly after my mother finally got fed up and made a new will.

Q. And when did that occur?

A. In December of 1983.

(N.T. 2/29/88 p. 7).

Q. And your mother entrusted [her MAC card] card to you, that is she gave you the card so you could keep the card?

A. That's correct.

Q. And you could make deposits and withdrawals out of your mother's account by the use of that card?

A. Yes.

Q. She gave you the code number, I believe you need to access the bank account, is that correct?

A. That's correct.

(*Id.* at 24).

This testimony suggesting a trust was bolstered by evidence that certain real estate was placed in express trust during the same time period. Other monetary assets were placed in jointly held certificates of deposit.

Similar evidence was then elicited during defendants' case-in-chief:

Q. You and Donald then decided to protect your mother from your sister?

A. With help from Warren Kauffman, yes.

Q. And your mother wasn't in a position to protect herself from your sister?

A. Well, she was but she was petrified because Lynne kept throwing up to her that she was going to have her ruled incompetent and she was going to take away her house and everything else. That's what started everything really with the ball rolling.

(N.T. 4/18/88 pp. 80–81).

Taken together the evidence was sufficiently "clear, precise and unambiguous" to establish that Alan was trustee of an express trust by which he held or had access to his mother's assets to use for her benefit.

■ This same conclusion cannot be made as to the other defendant, Terry Borbidge. Little evidence was presented as to Terry's involvement with Sally beyond that she was married to Alan, and that she received assets from Sally's estate in the form of numerous checks made payable to her. This evidence was insufficient to establish that she stood in any kind of fiduciary relationship to Sally.[14] The fact of her relationship to the trustee does not make her a trustee as well.[15] *Compare In re Paolino*, 89 B.R. 453 (Bankr.E.D.Pa.1988) (wife responsible for husband's fraud where he acted as her agent to advance a particular project).[16]

■ Having concluded that Alan stood in a fiduciary relationship to his mother by express trust, I next consider whether a defalcation occurred and, if so, its scope. The parties agree that by various means the defendants came into possession of $145,194.61 from Sally Borbidge's estate. The plaintiff asserts that the full amount constitutes a defalcation of trust assets. The defendants respond that a portion of the money was obtained by Alan as a gift from his mother to equalize *inter vivos* transfers to siblings and that the balance was actually used for Sally's benefit.

■ Defalcation has been defined as failure by a trustee to properly account for the funds entrusted to him. *Carey Lumber Co. v. Bell*, 615 F.2d 370, 376 (5th Cir.1980); *Central Hanover Bank & Trust Co.; Kwiat v. Doucette*, at 190; *In re Cowley*, 35 B.R. 526, 529 (Bankr.D.Kan. 1983); *In re Levitt*, 18 B.R. 598, 602 (Bankr.E.D.Pa.1982). Having established the existence of a trust, I think it can be fairly said that a plaintiff proceeding under section 523(a)(4) carries his burden to establish defalcation by a preponderance where he shows that funds from the trust res came to be paid directly to the trustee. The burden then shifts to the trustee to establish that the assets received by him

14. No distinction was made for the purposes of defendants' motion for involuntary dismissal between Alan and Terry and I did not consider the different evidence presented as to each defendant in my prior unpublished memorandum. I note that my prior order denying defendants motion for involuntary dismissal does not preclude my conclusion here as to Terry. *See generally, Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (court has some discretion in applying law of the case); *Schultz v. Onan Corp.*, 737 F.2d 339 (3rd Cir. 1984). I note also that the evidence presented on defendants' case-in-chief suggested that Alan stood in a fiduciary relationship to his mother, but Terry did not.

15. This does not mean, however, that money she received as Alan's wife from the trust res is not chargeable to Alan for his defalcation.

16. *See also In re Paolino*, 75 B.R. 641 (Bankr.E. D.Pa.1987) for a discussion of the law regarding imputation of an agent's fraud to a principal under 11 U.S.C. § 523(a)(2)(A).

were obtained as a gift, that they were actually used for the benefit of the intended beneficiary of the trust or that they were obtained in repayment for services provided to the beneficiary. *See Bellis v. Thal,* 373 F.Supp. 120 (E.D.Pa.1974) *aff'd mem.* 510 F.2d 969 (3rd Cir.1975) (corporate officer is a fiduciary who has burden to establish good faith of insider transactions to his benefits). *See also Complete Drywall Contracting, Inc.,* 11 B.R. 697 (Bankr.E.D.Pa.1981). The fact that the trustee controls assets by virtue of a fiduciary relationship alters the normal rule that establishment of a joint bank account will be prima facie evidence that a gift was intended. *See generally, In re Pitone's Estate,* 489 Pa. 60, 413 A.2d 1012 (1980).

Here the defendant's testimony that gifts were intended was not credible. The fact that other family members may have wrongfully obtained assets from the estate is insufficient to establish that Sally Borbidge intended to equalize distribution by an *inter vivos* transfer to Alan. In fact, the evidence suggests that the trust was established to protect against further depletion of the estate to Sally Borbidge's detriment. Additionally, the absence of gift tax returns and the fact that Sally repaid the defendants for income taxes payed on the trust assets constitutes circumstantial evidence that no gift was intended.

Similarly, testimony that many thousands of dollars in cash were obtained by the defendants from the estate and then used for Sally's benefit lack credibility as discussed in my findings and conclusions. Given the defendants' burden of proof on this issue, I have credited Alan with all sums which the evidence substantiates were used for Sally Borbidge's benefit.

An appropriate order will be entered.

### ORDER

AND NOW, this 30 day of August, 1988, upon consideration,

it is hereby ORDERED that the Chief Deputy Clerk in Charge of Bankruptcy Operations shall enter judgment in accordance with Bankr.Rule 9021(a) in favor of plaintiff against defendant Alan Borbidge in the amount of $134,339.26. That sum is nondischargeable by virtue of 11 U.S.C. § 523(a)(4).

It is further ORDERED that judgment shall be entered in favor of defendant Terry Borbidge and against the plaintiff.