**In re John JAMES a/k/a James Insurance Service, Debtor.**

**Jessie GRAVES and Edward Graves Individually and Jess & Ron Corporation, Plaintiffs,**

**v.**

**John JAMES a/k/a James Insurance Service, Defendant.**

**Bankruptcy No. 87–00070F.**

**Adv. No. 87–0834F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 21, 1988.

Pierre B. Pie, II, Philadelphia, Pa., for plaintiffs, Jessie & Edward Graves, Individually and Jess & Ron Corp.

D. Bruce Hanes, Philadelphia, Pa., for debtor/defendant, John James a/k/a James Ins. Service.

Christopher Kuhn, Pincus, Bressler, Hahn, Reich & Weisberg, Philadelphia, Pa., Trustee.

### MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge.

The parties have presented their respective cases by stipulation in this proceeding to determine dischargeability of a debt and

the relevant facts may be summarized as follows:[1]

## I.

The debtor/defendant is a licensed insurance agent who operated James Insurance Service as a sole proprietorship at all times relevant to this dispute. During the relevant period, the defendant's brother, Charles James, was an employee of the agency.

The plaintiffs, Jessie and Edward Graves have owned and operated an unspecified business in West Philadelphia since prior to 1978. In 1978 and 1979 the plaintiffs paid defendant for an insurance policy covering the building containing their business and its contents. The defendant purchased a policy for the plaintiffs in 1978 and 1979 (for the periods 1979 and 1980) from the Insurance Placement Facility of Pennsylvania (the "FAIR plan"). In 1980, the defendant billed the plaintiffs for the same policy and the plaintiffs paid their premium. Nevertheless no insurance policy was purchased on the plaintiffs' behalf (covering 1981) and the payment was simply placed in the defendant's general operating account. Again in 1981, the plaintiffs were billed, they paid, but no policy was purchased by the defendant for 1982 coverage.[2]

It almost goes without saying that on September 23, 1982, a fire occurred at the plaintiffs' business "which caused damage to plaintiffs' building and the contents therein." (*See* N.T. 5/18/88 p. 2). No evidence was presented about the extent of the damage. Of course, the FAIR plan denied the plaintiffs' claim.

At a deposition held in 1984,[3] Charles James, the defendant's brother, took responsibility for the failure to procure insurance for the plaintiffs. He admitted receiving the plaintiffs' premiums, and depositing them in the agency account. He further acknowledged that he neglected to forward either premium to the FAIR plan and that he "sat on it." Id. at 4.[4] Defendant, John James, also testified at a deposition in 1984 that his brother handled the plaintiffs' account and that he (John James) was without knowledge that the monies for either policy period were not forwarded to the FAIR plan until the plan refused to pay the plaintiffs' claim.

## II.

It is my understanding that I am not being asked to liquidate any claim which the plaintiffs have against the defendant, but only to determine whether it is nondischargeable.[5] *Compare In re Paolino*, 89 B.R. 453 (Bankr.E.D.Pa.1988) (claim not liquidated) *with In re Borbidge*, 90 B.R. 728 (Bankr.E.D.Pa.1988) (claim liquidated). *See also In re Stelweck*, 86 B.R. 833 (Bankr.E.D.Pa.1988) (not appropriate to liquidate claim in dischargeability proceeding). No evidence was presented by which I could determine the amount of plaintiffs' damages.

The plaintiffs have chosen to proceed under subsection 523(a)(2)(A) for asserted false pretenses, false representation or actual fraud and under subsection 523(a)(4) for alleged fraud or defalcation in a fiduciary capacity.[6]

---

1. This memorandum constitutes the findings of fact and conclusions of law required by Bankr. Rule 7052.

2. Premiums for the years 1981 and 1982 were $1610 and $1620 respectively. Upon payment by the plaintiffs, their funds were placed in the defendant's general operating account.

3. The deposition was related to the underlying state court action by the plaintiffs against the defendant.

4. Charles James has apparently had a stroke; it is asserted that he is currently unable to speak.

5. Apparently, a proceeding in state court was commenced prepetition and stayed by the defendant's bankruptcy filing. The plaintiffs appear to be content to resume that action if their claim is determined to be nondischargeable here. *See* 11 U.S.C. § 523(c). I do not discuss the implications of 11 U.S.C. § 362(a).

6. At trial I ordered that in post-trial submissions the plaintiffs specify the provisions of section 523(a) under which they are proceeding. The plaintiffs have designated subsections 523(a)(2)(A) and 523(a)(4) only. I will thus treat any claim they might have under subsection 523(a)(6), *see In re Strauss*, 86 B.R. 559 (Bankr.N.D.Ill.1988), as waived.

### A. *11 U.S.C. § 523(a)(2)(A):*

 Under subsection 523(a)(2)(A) the plaintiff must prove

(1) the debtor made a materially false representation; (2) the representation was made with intent to deceive; (3) the creditor justifiably relied on the representation; and (4) the creditor sustained proximate damage as a result of the representation. *In re Gelfand,* 47 B.R. [876] at 879 (Bankr.E.D.Pa.1985); *accord, In re Woods,* 66 B.R. 984 (Bankr.E. D.Pa.1986).

*In re Paolino,* at 461, *quoting In re Paolino,* 75 B.R. 641, 646 (Bankr.E.D.Pa.1987). Each element must be proved by the creditor by clear and convincing evidence. *Id. See also, e.g., Matter of Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987); *In re Black,* 787 F.2d 503, 505 (10th Cir.1986).

Here, the requisite intent to deceive was not proved by clear and convincing evidence. Although plaintiffs accurately point out that one year's failure to procure insurance may have been inadvertent, but two years failure suggest fraud, I conclude that the inference created is insufficient to establish intent, without more, by the requisite clear and convincing evidence. No corroborating evidence was presented that either Charles James or the defendant was aware of the failure to procure plaintiffs' policy prior to denial of the claim.[7] Nothing was presented, for example, about the defendant's recordkeeping procedures, customary practices in procuring insurance or volume of business. Additionally, no evidence was presented that either Charles or John made use of the funds other than depositing them in the business bank account.

Absent the requisite evidence of fraudulent intent, a claim under subsection 523(a)(2)(A) must fail. *Compare In re Koch,* 83 B.R. 898 (Bankr.E.D.Pa.1988)

(statutory presumption under 523(a)(2)(C) negates the need for proof of intent).

### B. *11 U.S.C. § 523(a)(4):*

 The plaintiffs' case under section 523(a)(4) is significantly different.

As I set out in *In re Salamone,* 78 B.R. 74, 76 (Bankr.E.D.Pa.1987):

11 U.S.C. § 523(a)(4) provides for the nondischargeability of any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Collier explains that section 523(a)(4) creates an exception based on (1) fraud or defalcation while acting in a fiduciary capacity or (2) embezzlement or larceny while not acting in a fiduciary capacity. 3 *Collier on Bankruptcy* 523.14 (15th ed. 1987) (*"Collier"*). *Accord, In re Kapnison,* 65 B.R. 221 (Bankr.D.Kan. 1983). Under the former ground, it is well established that the requirement that the debtor be acting in a fiduciary capacity refers to express trusts and not trusts *ex maleficio* which may be imposed due to the very wrongful act out of which the debt arose. *In re Lane,* 76 B.R. 1016, 1022 (Bankr.E.D.Pa.1987); *In re Kapnison; In re Gould,* 65 B.R. 87 (Bankr.N.D.N.Y.1986); *In re Kwiat,* 62 B.R. 818 (Bankr.D.Mass.1986); 3 *Collier* ¶ 523.14[1] at 523–93 to 523–96.

*See also In re Napoli,* 82 B.R. 378, 381 (Bankr.E.D.Pa.1988).

Plaintiffs proceed here alleging defendant's defalcation in a fiduciary capacity. As I held very recently, the plaintiff must prove the requisite fiduciary relationship by evidence that is clear, precise and unambiguous,[8] but may prove defalcation by a preponderance of the evidence. *In re Borbidge,* 90 B.R. at 733 (Bankr.E.D.Pa.1988).

Central to that holding and to the judgment in that case is my conclusion that defalcation does not require proof of dishonest conduct, but may arise from negli-

---

**7.** To the extent that evidence of intent exists at all, it goes to the intent of Charles James rather than the defendant. I have concluded, however, that under 523(a)(2)(A), the fraud of an agent can be imputed to his principal. *In re Paolino,* 75 B.R. 641 (Bankr.E.D.Pa.1987). That makes Charles' intent relevant to the case at bench.

**8.** This conclusion is based on state law. *See, e.g., In re Trbovich,* 488 Pa. 583, 413 A.2d 379, 380 (1980).

gence or ignorance. *Id.* at 734. Defalcation has been defined as failure by a trustee to properly account for the funds entrusted to him. *Id.* at 736. *See Carey Lumber Co. v. Bell,* 615 F.2d 370, 376 (5th Cir.1980); *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 512 (2nd Cir. 1937); *Kwiat v. Doucette,* 81 B.R. 184, 190 (D.Mass.1987); *In re Cowley,* 35 B.R. 526, 529 (Bankr.D.Kan.1983); *In re Levitt,* 18 B.R. 598, 602 (Bankr.E.D.Pa.1982).[9]

Here the existence of an express trust has been admitted by the defendant. *Defendant's Memorandum* at 2. According to the parties, the fiduciary relationship of the parties emerges from Pennsylvania law, 40 P.S. § 273.1, entitled "Fiduciary Capacity of Agents and Brokers":

> Every insurance agent and broker, acting as such in this Commonwealth, shall be responsible in a fiduciary capacity for all funds received or collected as insurance agent or broker and shall not, without the express consent of his or its principal, mingle any such funds with his or its own funds or with funds held by him or it in any other capacity. Nothing herein contained shall be deemed to require any such agent or broker to maintain a separate bank deposit for the funds of each such principal, if and as long as the funds so held for each such principal are reasonably ascertainable from the books of account and records of such agent or broker.

This language appears to create a specific fiduciary obligation on the part of the defendant as to the premiums paid by the plaintiffs. *Compare In re Napoli,* 82 B.R. at 382 (no general fiduciary relationship created as to partnerships by New Jersey statutory or common law). Despite the contentions of both parties, however, I note that the fiduciary relationship contemplated by 40 P.S. § 273.1 appears to flow from insurance agent to insurer, rather than from agent to insured. *See generally Minnick v. Commonwealth,* 32 Pa.Commonwealth 225, 378 A.2d 1046 (1977). · *Cf. Morgan v. American Fidelity Fire Insurance Co.,* 210 F.2d 53 (8th Cir.1954) (similar fiduciary relationship found on the basis of contract).

Nevertheless, in the instant case, a fiduciary relationship was created between the defendant, as agent, and the plaintiffs because money was paid over by the plaintiffs to the insurance agency in express trust for the purpose of purchasing fire coverage from the insurer. Thus, even absent the statute, under such circumstances, the policy payment, less the defendant's commission, was the trust res. That res was to be used to purchase insurance for the plaintiffs' benefit. *See Hamby v. Saint Paul Mercury Indemnity Co.,* 217 F.2d 78 (4th Cir.1954).

The more difficult question is whether a defalcation occurred for which the defendant is responsible. In *In re Borbidge* at 736, I concluded that a plaintiff under section 523(a)(4) "carries his burden to establish defalcation by a preponderance of the evidence where he shows that funds from the trust res came to be paid directly to the trustee." Here, the trust res was placed directly in the defendant's business bank account. The burden then shifts to the defendant to show that no defalcation occurred. *See Bellis v. Thal,* 373 F.Supp. 120 (E.D.Pa.1974) *aff'd. mem.* 510 F.2d 969 (3rd Cir.1975) (corporate officer is a fiduciary who has burden to establish good faith of insider transactions to his benefit).

Here the crux of the case is whether John James, as insurance agent, is responsible as a fiduciary for monies which were paid over in trust to his agency where he claims that the admitted misapplication of funds was that of his brother/employee rather than him. I note that in Pennsylvania, as elsewhere, a fiduciary is not, in general, responsible for acts of his agents vis-a-vis the beneficiary of the trust. *See In re Bender's Estate,* 278 Pa. 199, 122 A.

---

**9.** The existence of a provision which makes claims against a fiduciary non-dischargeable absent dishonest conduct probably emerges from the special duty of care which a fiduciary owes to the trust's beneficiary, pursuant to an express trust. *See Borbidge* at 734, n. 10.

283 (1923); 39 P.L.E. (Trusts) § 190 at 119.[10] However where the trustee bears some fault in the circumstances giving rise to the defalcation, such as failure to supervise the agent, liability has been found. *See* III *Scott on Trusts*, § 225.1 at 1794 to 1795. (3rd ed. 1967). As stated in *Scott:*

> The trustee is liable for the acts of an agent employed by him in the administration of the trust if the trustee is himself guilty of a violation of a duty to the beneficiaries. Thus where the agent does an act which if done by the trustee would constitute a breach of trust, the trustee is liable if he directed or permitted the doing of the act. He is liable if he improperly delegates to an agent the performance of acts which he was under a duty personally to perform. He is liable for the acts of an agent employed by him in the administration of the trust, if he did not use reasonable care in the selection or retention of the agent. The trustee is liable for acts of the agent if the trustee has failed to exercise proper supervision over the conduct of the agent. He is liable if he unnecessarily entrusts money or securities of the trust or title deeds or other property, with the result that the agent misappropriates it. He is liable where the agent does an act which if done by the trustee would be in breach of trust, if the trustee approved or acquiesced in or concealed the act of the agent. The trustee is liable if the agent does an act which if done by the trustee would be in breach of trust, if he

does not take proper steps to compel the agent to redress the wrong.
> (footnotes omitted.) [11]

In the instant case, Charles James deposited the trust res in the defendant's bank account. As discussed above, this shifted to the defendant the burden of establishing that he bears no responsibility for the misconduct of his employee. This burden was not carried here, especially in the face of evidence that the money was misallocated for two years consecutively, even if such misallocation was innocent.[12] An insurance broker has responsibility to reconcile books and records as well as to supervise its employees so that failure to procure policies does not occur. Defendant presented no evidence that he took reasonable steps to supervise his employees or otherwise insure that premiums entrusted to the agency were properly applied.

In short, I conclude that the defendant bears responsibility for failure to procure policies for the plaintiffs.[13] He has not carried his burden to shift responsibility to his brother alone. Accordingly, the defendant has defalcated and the damages proximately caused by that defalcation are nondischargeable.

An appropriate order will be entered.

### ORDER

AND NOW, this 21st day of September, 1988, upon consideration of the stipulated record and arguments of counsel,

it is hereby ORDERED that the Chief Deputy Clerk in Charge of Bankruptcy Op-

---

**10.** This rule seems to have emerged from situations where a trustee innocently employs an agent, such as an attorney, over whom he has little control. In *Bender,* for example, an executrix was not held liable for the misappropriations of an attorney settling the estate.

**11.** Although no authority is cited, *Scott* also suggests that a trustee might be held liable for negligence of his own employees, even though he might not be responsible for negligence of those employed by him at the expense of the trust estate. *Scott* § 225.2 at 1796. This concept must flow from the duty of a trustee to supervise and control those directly in his employ.

**12.** Even if I were to conclude that defalcation required some proof of reckless or other wrong-

ful conduct by a preponderance of the evidence, that burden would be met here by evidence that the defendant failed to procure insurance two years consecutively. Although that evidence may not support an inference of malfeasance by clear and convincing evidence as discussed above, it does meet a preponderance standard.

**13.** Under the circumstances presented, the defendant is directly responsible for the defalcation. This is thus not a situation where the acts giving rise to non-dischargeability are imputed from agent to principal. *Compare In re Paolino,* 75 B.R. 641 (Bankr.E.D.Pa.1987) (under § 523(a)(2)(A) fraud may be imputed from agent to principal). *See supra* note 7.

erations is directed to enter judgment in favor of the plaintiffs and against the defendant. The defendant's debt to the plaintiffs is non-dischargeable by virtue of 11 U.S.C. § 523(a)(4).