In re Francis MANZO, a/k/a Frank Manzo, Debtor.

**CHICAGO TITLE INSURANCE CO., Plaintiff,**

v.

**Francis MANZO, a/k/a Frank Manzo, Defendant.**

**Bankruptcy No. 85–01353T.
Adv. No. 85–1093.**

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 17, 1989.

Arsen Kashkashian, Jr., Bensalem, Pa., for debtor.

William W. Marutani, Dilworth, Paxon, Kalish & Kauffman, Philadelphia, Pa., for plaintiff.

Joseph H. Wagner, Doylestown, Pa., for Ronald Saricks.

Frederick L. Reigle, Reigle & Gellert, Reading, Pa., Chapter 7 Trustee.

## OPINION

THOMAS M. TWARDOWSKI, Chief Judge.

Chicago Title Insurance Co. ("plaintiff") filed this complaint objecting to the discharge of a debt owed to it by Francis Manzo ("debtor") pursuant to 11 U.S.C. § 523(a)(2)(A) and (4).[1] Because we find that the debt arose as a result of defalcation committed while acting in a fiduciary capacity, we rule in favor of plaintiff and find that the debt is nondischargeable under § 523(a)(4). A brief recitation of the relevant facts follows.

Debtor is a licensed title insurance agent and was the majority shareholder[2] and President of Heritage Abstract Company ("Heritage"), a title search company which was established in 1972. On August 15,

---

1. On January 12, 1989, we entered an order granting plaintiff's motion in limine and directed that the trial in this adversary case be limited to the issue of whether the debt owed plaintiff is dischargeable. Therefore, the parties have not presented evidence regarding, and we will not decide, the amount of the indebtedness owed plaintiff.

2. The record reflects that debtor owned 95% of the stock in Heritage Abstract Company.

1981, Heritage entered into an issuing agency contract with plaintiff, an underwriter of title insurance. The issuing agency contract was executed by debtor in his capacity as President of Heritage. Pursuant to the issuing agency contract, Heritage was authorized to act as plaintiff's agent for the purpose of promoting and transacting title insurance business, including issuing title insurance policies and conducting real estate settlements. Paragraph 3(F) of the issuing agency contract required Heritage to deposit all funds received at settlements into an escrow account kept separately from Heritage's operating account and to disburse these funds only for the purposes for which they were entrusted. Additionally, to induce plaintiff to enter into the issuing agency contract with Heritage, both debtor and Ronald Saricks, the minority shareholder of Heritage, executed personal guarantees promising to indemnify plaintiff from any loss it might sustain as a result of its agency relationship with Heritage.

Thereafter, beginning in January of 1982, eight shortages occurred in various real estate settlements. More specifically, although Heritage collected sufficient funds at the settlements to pay the disbursements required for each settlement, on eight instances a deficiency occurred and the mortgages on the properties being conveyed were not paid by Heritage from the settlement proceeds. As a result, plaintiff was obligated to pay these mortgages under the title insurance policies so that clear and marketable titles could be conveyed. Neither debtor nor plaintiff could explain why the shortages occurred; however, plaintiff introduced several suspicious checks drawn on Heritage's escrow account, some of which were payable to cash, some to Heritage and some to debtor.[3] None of these suspicious checks contained notations identifying the settlements to which they pertained or the purposes for which they were written even though it was Heritage's standard business practice to write such notations on checks drawn out of the escrow account. Moreover, debtor could not explain why these suspicious checks were written and could not identify the settlements to which they pertained.

11 U.S.C. § 523(a)(4) excepts from discharge any debt arising from fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. Plaintiff presses its complaint under § 523(a)(4) solely on the ground that the debt arose from defalcation while acting in a fiduciary capacity. Hence, we will limit our discussion to this portion of § 523(a)(4).[4]

■ To prevail in a dischargeability action under this portion of § 523(a)(4), the plaintiff bears the burden of proving that the debt arose: (1) from defalcation; and (2) while the debtor was acting in a fiduciary capacity as a result of an express trust. *Graves v. James (In re James)*, 94 B.R. 350 (Bankr.E.D.Pa.1988); *Eckel v. Borbidge (In re Borbidge)*, 90 B.R. 728 (Bankr.E.D. Pa.1988); *Bellity v. Wolfington (In re Wolfington)*, 48 B.R. 920 (Bankr.E.D.Pa. 1985). Defalcation need only be proven by a preponderance of the evidence, while the express trust must be established by clear, precise and unambiguous evidence. *In re James, supra; In re Borbidge, supra.*

We first address the question of whether plaintiff has met its burden of proving the existence of an express trust. This issue is complicated by the fact that the issuing agency contract was between Heritage and plaintiff and did not expressly name debtor as a party. Nonetheless, for the following reasons we conclude that plaintiff has met its burden of proof on this issue.

■ First, we find that an express trust was created between debtor, as a licensed title insurance agent, and plaintiff under Pennsylvania law. Specifically, § 273.1 of

---

**3.** The amounts of these checks ranged from $5,000.00 to $25,000.00 and totalled $53,000.00.

**4.** Plaintiff also argues that the debt should be found nondischargeable under § 523(a)(2)(A). We disagree because we find that plaintiff has not introduced any evidence to establish that the debt was for money or services obtained by debtor by false pretenses, a false representation or fraud. *See, United States v. Stelweck (In re Stelweck)*, 86 B.R. 833 (Bankr.E.D.Pa.1988).

the Insurance Department Act of 1921,[5] which pursuant to § 21 applies to title insurance agents, brokers and companies, provides:

> Every insurance agent and broker, acting as such in this Commonwealth, shall be responsible *in a fiduciary capacity for all funds received or collected* as insurance agent or broker and shall not, without the express consent of his or its principal, mingle any such funds with his or its own funds or with funds held by him or it in any capacity....

40 Pa.S.A. § 273.1 (emphasis added). We hold that this statute created an express trust between debtor, a licensed title insurance agent, and plaintiff with respect to settlement funds collected by Heritage in connection with settlements held as agent for plaintiff. *See, In re James, supra* at 353 (fiduciary relationship contemplated by § 273.1 of the Insurance Department Act appears to flow from insurance agent to insurer).

■ Second, we conclude that paragraph 3(F) of the issuing agency contract[6] between plaintiff and Heritage created an express trust and that the funds received by Heritage in connection with settlements conducted on behalf of plaintiff constituted the trust res. Although it is generally understood that a corporate officer, director or shareholder is not liable as a fiduciary under § 523(a)(4) for corporate debts owed to the corporation's creditors, an exception exists when the corporation is entrusted with funds for a particular purpose and the debt owed to the creditor bears a special relationship to the funds. *United Virginia Bank v. Fussell (In re Fussell),* 15 B.R. 1016 (W.D.Va.1981); *In re Worthington, supra; Travelers Express Co., Inc. v. Niven (In re Niven),* 32 B.R. 354 (Bankr.W.D.Okla.1983). Stated another way, several courts have held that a fiduciary relationship exists under § 523(a)(4) between a corporate officer and a creditor of the corporation when there is a contract establishing an express trust between the corporation and the creditor. *Ealy Campbell Mobile Homes, Inc. v. Whitlock (In re Whitlock),* 449 F.Supp. 1383 (W.D.Mo.1978); *Sun Life Insurance Co. of America v. Koszuth (In re Koszuth),* 43 B.R. 104 (Bankr.M.D.Fla.1984). Instantly, the issuing agency contract established an express trust between Heritage and plaintiff. Accordingly, under these theories we conclude that debtor's status as a 95% shareholder and President of Heritage, when combined with debtor's personal guarantee to plaintiff, and the fact that the debt owed to plaintiff arose as a result of the failure to account for the settlement funds entrusted to Heritage pursuant to the issuing agency contract, mandate a finding that an express trust exists between plaintiff and debtor.

■ We next turn to the question of whether a defalcation occurred. Defalcation is defined for purposes of § 523(a)(4) as the failure of a fiduciary to properly account for funds entrusted to him. It is irrelevant whether the fiduciary engaged in wrongdoing or was negligent or ignorant of the misappropriation. Rather, in this context, defalcation includes any failure by a fiduciary to properly account for entrusted funds. Furthermore, there need not be a personal gain to the fiduciary. *See, Central Hanover Bank and Trust Co. v. Herbst,* 93 F.2d 510 (2nd Cir.1937); *In re James, supra; In re Wolfington supra; American Metals Corporation, E.L. v. Cowley (In re Cowley),* 35 B.R. 526 (Bankr. Kan.1983); *In re Niven, supra.*

■ Instantly, there is no dispute that sufficient funds were collected by Heritage at the settlements to pay all disbursements required for each settlement, but that nonetheless, the shortages occurred. Once the plaintiff establishes that the trust res was delivered to the fiduciary, the burden shifts to the debtor to show that no defal-

---

**5.** Act of May 17, 1921, P.L. 789, as amended, 40 Pa.S.A. § 273.1.

**6.** Paragraph 3(F) of the issuing agency contract provides: "Agent shall ... [k]eep safely in accounts separate from Agents' [sic] personal or operating accounts all funds received by Agent from any source in connection with transactions which Principal's title insurance is involved and to disburse said funds only for the purpose for which the same were entrusted.

cation occurred. *In re James, supra.* As debtor was not able to introduce evidence that a defalcation did not occur, we must find in favor of plaintiff, especially in light of the suspicious checks and debtor's inability to explain them. Accordingly, we find that the debt owed to plaintiff by debtor is nondischargeable under § 523(a)(4).

An appropriate order will follow.