**In the Matter of Theodore R. JENKINS, Debtor.**

**Roxani M. GILLESPI, Insurance Commissioner, State of California, in her capacity as Conservator for Capitol Bond & Insurance Co., Plaintiff,**

v.

**Theodore R. JENKINS, Defendant.**

**Bankruptcy No. 88–2071–8B7.**

**Adv. No. 88–417.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 24, 1990.

Domenic L. Massari, III, Tampa, Fla., for plaintiff.

Harvey Paul Muslin, Tampa, Fla., for defendant.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THE MATTER under consideration in this Chapter 7 case is a four count com-

plaint filed by Plaintiff, Roxani M. Gillespi, Insurance Commissioner, to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(4) in Count I, 523(a)(2)(B) in Count II, and 523(a)(6) in Count IV. In Count III, Plaintiff objects to discharge pursuant to 11 U.S.C. § 727. At the final evidentiary hearing, Plaintiff moved for summary judgment for Counts I and IV [1] on the basis there remain no genuine issues of material fact, and therefore the issue of dischargeability of a of a debt should be decided as a matter of law. The Court reviewed the record and finds the parties have stipulated to the relevant facts as follows:

Plaintiff is the Insurance Commissioner of the State of California. She is bringing this complaint in her capacity as Conservator of Capitol Bond & Insurance Company (CBI). CBI is a licensed California insurance and bonding corporation. Part of its business consists of issuing surety bonds for the faithful performance of construction contracts by California licensed contractors on a per job basis. It only does business in the State of California.

Defendant, Theodore R. Jenkins (Debtor) was the president and sole shareholder of the now defunct Sunset Oil Company, Inc. (Sunset Oil), a California corporation. Its main function was paving roads for California municipalities. It employed its own crew and laborers, as well as materialmen and subcontract laborers.

Debtor, as president and secretary of Sunset Oil and an individual indemnitor, executed and delivered a General Indemnity Agreement to CBI to obtain the issuance of various performance and payment bonds. Sunset Oil needed these bonds because it could not perform road paving jobs for various California municipalities without them. In relying on the General Indemnity Agreement, CBI issued performance and payment bonds to various governmental entities on behalf of Sunset Oil.

Sunset Oil completed all jobs under contract which were accepted by the governmental authorities. From November 1985 through May 1986 Sunset Oil received $287,151.14 in final draws from the municipalities which totaled $917,693.02. Sunset Oil paid its own crew and labor for their work, however, it did not pay the materialmen and subcontract laborers who provided materials or labor to the various jobs. The final draws would have been sufficient to pay the materialmen and laborers. Subsequently, the materialmen and laborers filed claims against CBI on the bonds issued by CBI in the amount of $302,051.09.

From March 1986 to May 1986 Debtor paid himself at least $187,138.79 as repayment of loans and advances to Sunset Oil or as back wages instead of paying the materialmen and subcontract laborers. Debtor had virtually no other funds in April and May 1986. Many of Sunset Oil's checks were made to cash and to employees to avoid the funds being taken by an IRS levy.

Debtor took $154,810.22 of the withdrawn funds from Sunset Oil and deposited these funds with Florida Asphalt Products, Inc. (Florida Asphalt), a Florida corporation owned by Debtor. Florida Asphalt was engaged in road paving in the State of Florida. It used these funds in the daily operations of the business as evidenced by the income and expense ledger.

Debtor filed for Chapter 7 relief under the Bankruptcy Code on April 12, 1988. Plaintiff brings this action to except Debtor's debt from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(B), 523(a)(4) and 523(a)(6) and objects to discharge pursuant to 11 U.S.C. § 727.

There is no evidence to support Plaintiff's claims under 11 U.S.C. §§ 523(a)(2)(B), 523(a)(6), nor 727 that is sufficient to meet the burden of proof of clear and convincing evidence. Thus, the Court is left with 11 U.S.C. § 523(a)(4), the claims of defalcation and embezzlement. Plaintiff alleges the acts of the Debtor were defalcation inasmuch as he was a fiduciary pursuant to the General Indemni-

---

1. Plaintiff admitted at the final evidentiary hearing she had no evidence to support a cause of action under 11 U.S.C. §§ 523(a)(2)(B) and 727.

ty Agreement or the California Penal Code or, in the alternative, the acts of the Debtor were embezzlement.

## EMBEZZLEMENT .

 As to embezzlement, Plaintiff argues the California Penal Code establishes both a fiduciary relationship and the basis for embezzlement. This Court disagrees. Federal law is controlling as to the definition of embezzlement. *Teamsters Local 533 v. Schultz (In re Schultz)*, 46 B.R. 880, 889 (Bankr.Nev.1985). Embezzlement is "the fraudulent appropriation of property by a person to whom such property has been intrusted or into whose hands it has lawfully come." *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr.M.D. Tenn.1982) *citing, Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895). For a claim of embezzlement, the Plaintiff must establish fraud in fact although it can be proven through circumstantial evidence. *Energy Marketing Corp. v. Sutton (In re Sutton)*, 39 B.R. 390, 395 (Bankr.M.D.Tenn.1984). Yet, more importantly, the proof must be by clear and convincing evidence. Also, there need not be a fiduciary relationship between the debtor and the creditor. *Lee v. Crosswhite (In re Crosswhite)* 91 B.R. 156, 159 (Bankr.M.D.Fla.1988); *Skemp v. Michel (In re Michel)*, 74 B.R. 88, 90 (Bankr. N.D.Ohio 1986). The stipulated facts presented to this Court do not establish the basis for fraud by clear and convincing evidence. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir.1988); *Lee v. Ikner (In re Ikner)*, 883 F.2d 986 (11th Cir.1989). Thus, Plaintiff's claim of embezzlement must fail.

## DEFALCATION

 In order to except a debt from discharge under a claim of defalcation, the Court must "first determine whether a fiduciary relationship exist[s], and then whether a defalcation occurred in the course of that fiduciary capacity." *Kwiat v. Doucette*, 81 B.R. 184, 188 (Mass.1987). Plaintiff alleges the General Indemnity

Agreement or the California Penal Code establishes the fiduciary relationship.

Paragraph 8(T) of the General Indemnity Agreement between Debtor and CBI states:

> The Undersigned and their successors, executors and administrators agree to hold all money or other proceeds of a Contract, however received, as a trust for the benefit of Surety and to use such money or other proceeds for the purpose of performing the Contract and discharging the obligations of the Bond, and for no other purpose until the Bond is completely exonerated.

In order for the language of the General Indemnity Agreement to create a fiduciary relationship, i.e. in this case a trust, the language must create a trust, establish a trust corpus, and show an intent by the parties to create a fiduciary relationship. *NesSmith Electric Co., Inc. v. Kelley (In re Kelley)*, 84 B.R. 225 (Bankr.M.D.Fla. 1988); *Pioneer General Insurance Company v. Midkiff (In re Midkiff)*, 86 B.R. 239 (Bankr.Colo.1988). Further, the fiduciary relationship cannot arise ex maleficio, i.e. at the point the defalcation takes place. *Star Industries, Inc. v. Ruskin (In re Ruskin)*, 34 B.R. 12 (Bankr.M.D.Fla.1983); *In re Crosswhite, supra*, at 160. For these reasons, the California Penal Code does not create a fiduciary relationship between Debtor and the Plaintiff. On the other hand, this Court finds paragraph 8(T) of the General Indemnity Agreement meets the criteria and a fiduciary relationship was created between the Debtor and CBI. The only remaining question is whether Debtor's acts caused the defalcation.

> Defalcation is defined for purposes of § 523(a)(4) as the failure of a fiduciary to properly account for funds entrusted to him. It is irrelevant whether the fiduciary engaged in wrongdoing or was negligent or ignorant of the misappropriation. Rather, in this context, defalcation includes any failure by a fiduciary to properly account for entrusted funds. Furthermore, there need not be a personal gain to the fiduciary.

*Chicago Title Insurance, Co. v. Manzo (In re Manzo),* 106 B.R. 69, 72 (Bankr.E.D. Penn.1989).

Debtor acknowledges he repaid himself over $180,000.00 in shareholder loans and back salary within the last weeks of Sunset Oil's operation. These funds were proceeds from the contracts within the coverage of the General Indemnity Agreement and could have been used to pay the existing materialmen and subcontractors' claims on the contracts. Plaintiff has met its burden of proof by clear and convincing evidence in that it has established a fiduciary relationship on the part of the Debtor to CBI and, thus, the Plaintiff. Debtor's acts of having Sunset Oil pay his loans and advances from proceeds under the contracts which were the subject matter of the General Indemnity Agreement and taking inordinate salary during March through May, 1986 constitute defalcation. Therefore, Plaintiff is entitled to a judgment holding the debt due from Debtor to Plaintiff as Conservator as nondischargeable under 11 U.S.C. § 523(a)(4) to the extent Debtor repaid himself loans, and advances to the corporation, or took an inordinate salary during the final months of operation of Sunset Oil.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED Plaintiff's motion for summary judgment is deemed denied as moot inasmuch as a final evidentiary hearing was held on the matter. A separate final judgment based on the evidence submitted at the final evidentiary hearing and the findings of fact herein shall be entered by this Court.

DONE AND ORDERED.