POMEROY *v.* NOUD.

1. EQUITY — BILL OF REVIEW — LEAVE TO FILE — DISMISSAL ON
    HEARING.

   There is no doubt of the power of a court of chancery, after
     granting leave to file a bill of review, to dismiss the bill at
     the hearing if it then appears, contrary to the averments of
     the bill, that there is, in fact, no new matter or no matter
     which might not have been produced upon the original hear-
     ing; and this without considering to what extent, if any,
     the omitted matter, if produced, might or would have varied
     the terms of the decree sought to be reviewed.

2. SAME—MATTERS CONSIDERED.

   The rules governing the granting or refusing of leave to file
     bills of review, and the scope of the review following such
     leave, are to some extent founded in considerations of public
     policy, as well as those of private right.

3. TRUSTS—ACCOUNTING—DUTY OF TRUSTEE.

   A trustee is not always permitted to urge, against the strict
     examination of his accounts, all of the rules of legal warfare
     governing in purely adversary proceedings; and his duty to
     render an account not only mathematically correct, but
     equitably fair, and to submit his performances of the trust
     duties to examination, operates, often, to the advantage of
     cestuis que trust otherwise irretrievably in default.

4. REVIEW—FORECLOSURE — TRUST MORTGAGE — ACCOUNTING BY
    TRUSTEE.

   On a bill of review to reopen a decree for the foreclosure of a
     mortgage, rendered after the death of the mortgagor, it ap-
     peared that the mortgagee, pursuant to the terms of the
     mortgage, had been in possession of the mortgaged and other
     property of the mortgagor, and had been for several years
     conducting the mortgagor's business with a view to paying
     the mortgagor's indebtedness to himself and protecting him-
     self on indorsements; that he had never rendered an account,
     and that no one learned in the law had ever examined his
     accounts until after the granting of the foreclosure decree;
     that no accounting was attempted in the foreclosure proceed-
     ings nor the attention of the court directed to the fact that
     the mortgagee had for years conducted the business of the

mortgagor. It appeared that the guardian ad litem of certain infant defendants was present and submitted all questions concerning the rights of his wards to the court. *Held*, that the court should proceed to an examination of the case upon the merits, though no new matter was produced which might not have been presented by the original hearing.

5. Mortgages — Mortgagee in Possession — Conduct of Business—Compensation.

Where a mortgagee in possession of the mortgagor's business and property for the purpose of paying himself the indebtedness which the mortgage secures, there being no express agreement to compensate him for his management of the business, furnishes the mortgagor with annual statements containing a charge for that service, ratification and approval of such charges may be implied; but no such implication arises from the furnishing of similar statements to the mortgagor's administratrix after his death.

6. Same—Interest as Compensation.

Where the mortgagee, in such a case, takes credit for interest on the mortgage debt, for interest paid on loans to carry on the business, and for interest on money advanced by him for that purpose, he is not entitled to compensation for managing the business in the absence of an express agreement therefor.

7. Same—Interest.

It is equitable in such a case that the mortgagee should receive interest paid by him, and interest upon the indebtedness owed to himself.

8. Interest—Open Accounts.

Where a mortgagee in possession for the purpose of repaying the debt owed to himself and securing himself against indorsements, on paying notes of the mortgagor charges the amounts thereof in an account, his action in so doing does not operate to render such account an open account, unliquidated and noninterest bearing.

9. Same.

Sums advanced by the mortgagor to purchase material and for labor to carry on the business are not unliquidated and noninterest bearing.

Appeal from Manistee; McAlvay, J. Submitted April 6, 1906. (Docket No. 26.) Decided July 9, 1906.

Bill of review by Louisa Pomeroy, Emelia Pomeroy Mackin, individually and as administratrix of the estate of John C. Pomeroy, deceased, and others, against Patrick Noud to set aside a decree for foreclosure of a mortgage and for an accounting. From a decree dismissing the bill, complainants appeal. Reversed, and decree entered for complainants.

*Charles A. Withey* and *Frank L. Fowler*, for complainants.

*Dovel & Dovel*, for defendant.

OSTRANDER, J. Some references to testimony will be necessary to an understanding of the case, and will be made. The opinion of the trial judge, however, so fully outlines the case that it is here set out at length:

" In this case the complainant in her own behalf, also as administratrix of her father, John C. Pomeroy, together with the widow and heirs at law of said deceased, files her bill in the nature of a bill of review against the defendant, asking that a decree heretofore entered in this court, which this bill seeks to review, be set aside and an accounting be had between Patrick Noud, defendant, and the estate of John C. Pomeroy, and that said defendant be decreed to pay such estate any amount found due.

"On January 5, 1895, John C. Pomeroy, deceased, was insolvent, and defendant was indorser for him in the amount of about $40,000, and also held certain mortgages on real estate of said Pomeroy, and said Pomeroy, on January 3, 1895, gave defendant a mortgage for $43,000 to secure such indebtedness. This mortgage gave defendant a right to take possession of the property described therein ' and use and operate the same in such manner and for such length of time as to said second party shall seem advantageous, and apply the net earnings and proceeds to the payment of the obligations and indebtedness secured hereby, whether the same are due, or not; the operation of said bottling works and said mill property to be at the risk and expense of the said party of the first part.' Defendant took possession January 6, 1895, of the property turned over to him under the mortgage and certain other property not described or included therein, for

the purpose of making the attempt to realize the large amounts for which he had become indorser for Pomeroy, and proceeded to operate the said property and so continued until the years 1901 and 1902. Defendant, as mortgagee in possession, found it necessary in order to operate the property to any advantage to put in large amounts of fresh money of his own, and claims that it was necessary for him to borrow in order to do this, and pay interest. J. C. Pomeroy died in December, 1897, and the complainant, Emelia Pomeroy Mackin, was thereafter appointed administratrix of his estate.

" Much testimony has been offered relative to matters equally within the knowledge of the deceased and testified to by the parties to this proceeding. Such matters as are clearly within the prohibition of the statute (although some such testimony was put in the record) the court strikes out and holds such testimony incompetent.

" The business of the deceased consisted of a sawmill and planing mill, with some cedar and other timber to supply it, also a bottling works at Manistee, and at Frankfort, and certain real estate not described in the mortgage, all of which property and business the defendant took into his possession, except the bottling works and the homestead occupied by Pomeroy's wife and family, and, as before stated, proceeded to run the mill business and dispose of some of the other property.

" After the appointment of the administratrix and in December, 1897, or early in 1898, certain reports or statements of the business were made to the administratrix, and afterwards for the years 1898, 1899, 1900, 1901, and in the year 1902 the defendant began proceedings to foreclose his securities for the purpose of realizing a balance of $11,752.34, claimed by him to be due and unpaid upon the amount of indebtedness owing him under such securities. Personal service was had upon the defendants, who were the same as complainants in this suit, and a decree pro confesso was afterwards entered therein in favor of Patrick Noud and against the defendants for the amount claimed. Petition was filed early in 1903 asking leave to file a bill in the nature of a bill of review, which was heard and granted, and afterwards the bill of complaint in this cause was filed.

" The contention of the complainants in this suit is that the defendant, Patrick Noud, was practically a trustee, subject to all the duties and obligations required of

trustees; that he in administering said property was extravagant and made charges for personal service and also charges of large amounts for compound interest; that he neglected to deal with the representative of the estate fairly, and by a system of bookkeeping covered up his acts and doings so that they were not intelligible and understood by the administratrix, and that in this and other matters he did not deal fairly and honestly in the premises; that these matters complained of were not known to the complainants and could not be easily ascertained, and that, in truth and in fact, at the time this accounting is asked for, the estate of J. C. Pomeroy is entitled to a large amount of money from defendant and all the property upon the foreclosure proceedings he took or sold to satisfy his claim.

" Both on the hearing of the petition hereinbefore mentioned for leave to file a bill of review, and upon hearing of the case after the bill was filed and an issue joined, much more time than usual has been given by the court to this matter. The perplexities surrounding the case under the proofs are not few, and the questions raised are of great importance and in a branch of the law under which there are not many cases to guide the court in coming to a determination.

"The proofs show that the defendant, Patrick Noud, took this property at a time when the same was of little value, and by wise administration and business shrewdness, assisted by a rising market in timber, successfully administered it. The books of account disclosed that he kept an account called 'Patrick Noud, Mortgagee,' and also an account called 'J. C. Pomeroy, Special;' that in the first account all the transactions and doings relative to the property within the mortgage were entered, and in the second account matters not connected with the mortgage itself, but property outside of the mortgage received and administered by him. So far as the bookkeeping is concerned, its accuracy is undisputed, and the competency of his bookkeeper, Michael Fay, is not questioned. In fact, the expert accountant, H. N. Doughty, who spent much time upon these books for the complainant, and who, without question, is competent, certified to the accuracy of the bookkeeping, and that in arriving at his final figures they would be exactly the same as Fay's if the service account and interest account were added. Statements from these books were furnished in 1897 to

1901, inclusive, and after the administratrix was appointed and a large amount of claims proved in probate court, I think in the year 1901, a meeting of the creditors, the administratrix, and defendant Patrick Noud, was had for the purpose of going over the matters contained in said statements and discussing the claim of this defendant. A large number of creditors were represented, and the statements were submitted and discussed, and an adjourned meeting was had 30 days later for the purpose of ascertaining if any margin could be gotten for the creditors out of this property. Defendant Noud made the proposition to discount his claim to any one who would take the business off his hands, also to pay costs of foreclosure in case he began proceedings. At the second meeting of the creditors his proposition was not accepted, and no action was taken. He afterwards filed his bill, as hereinbefore stated, to foreclose his securities. The main question to be determined, as appears to the court, before a decree will be set aside upon the bill of review, is whether the showing made upon the proof discloses that there is new matter not within the knowledge of the complainants at the time of the former trial and not easily ascertained by them, or whether error of law has been committed in granting the decree. Taking the proofs offered on the part of the complainant and giving them their widest possible significance and weight, the court is not able to say that there is matter which was not within the knowledge of complainant, Emelia Pomeroy Mackin, administratrix, or easily ascertainable by her in time to be presented and heard on former trial. The statements furnished in 1897 to 1901 are practically the same as furnished now from the books and by Mr. Fay, and also it is claimed that the interest account did not accompany all of these statements. It appears to the court that any person with ordinary knowledge and discrimination could take these statements and know that a charge for service had been made by defendant Noud for himself and his bookkeeper.

"It is contended, on the part of complainants, that no service account should be allowed, but the mortgagee, Noud, was obliged to take the property and work out his indebtedness without charge. This is the old rule as to trustees, but the later and better authorities do not hold that in cases of this kind, where a mortgagee is in possession for the purpose of realizing from a bankrupt property sufficient to save him from loss, he must do so

gratuitously. The only proof in the case upon the value of his services is to the effect that the charge is reasonable. The other claim as to interest being compounded and added into the decree heretofore made is also a matter which entered into the statements heretofore referred to furnished by Noud, and there is proof in the case that, if interest had been computed according to the rule recognized by our courts in this State, the amount of the balance would have been greater than if computed as was done. These are the two matters upon which the complainants finally rested their case and claimed that this service account and compound interest account amount to the sum of $9,775 and that a decree should be made in their behalf for that amount and for the property sold upon the foreclosure decree; that at the time of the foreclosure defendant Noud was indebted to the estate in the sum aforesaid, and should have turned over the property to the administratrix. In the argument this contention is made on behalf of creditors except as represented by the administratrix and as claimed in the argument. The creditors have not appeared in this case, yet it is apparent to the court that the creditors have carefully gone over the statements rendered at the creditors' meeting and satisfied themselves that no margin remained for them, and, when it is considered that any amount this court might decree due the estate from defendant would be applied entirely upon the creditors' claims, their conduct in the premises has considerable weight with this court. The defendant is criticised also on account of dealing with the State Lumber Company, with which he was the largest owner, in purchasing lumber and sawing logs for him in carrying on his business. To any one acquainted with lumber business it is apparent that, when the timber is practically exhausted and the logs come in very slow, to keep a mill crew on the pay roll full time for the few days each month logs could be supplied would not be wise management, especially when at a fair figure the logs could be sawed at any other place. There is no proof, whatever, showing that any of the prices charged were exorbitant, or that the lumber purchased was not worth the price paid. In fact, the testimony is all to the contrary. The court is satisfied from the proofs in the case that there is no new matter such as is necessary and requisite to plant a bill of review upon disclosed in these proofs, and that the case when all in on the part of the

complainants does not differ in its results from the case made under the mortgage foreclosure.

"Therefore the prayer of the bill of complaint is denied, and the bill dismissed, without costs, and a decree will be entered accordingly."

It appears that leave was granted to the parties complainant here to file a bill in the nature of a bill of review in a foreclosure proceeding instituted in said court May 3, 1902, which, regularly, resulted in a decree which was filed September 6, 1902, and was later completed by a sale of the mortgaged property. The foreclosure proceeding involved, as appears from a bill of complaint therein, a certain mortgage, dated January 3, 1895, securing payment of $6,000, and a prior mortgage given September 28, 1887, securing payment of $5,000, assigned to complainant. The indebtedness secured by these mortgages was, all of it, so far as the foreclosure bill stated the facts, evidenced by certain promissory notes. No other indebtedness is mentioned in the foreclosure bill. There was no appearance of defendants in the foreclosure proceedings. The mortgage securing the payment of $6,000 is conditioned also upon paying certain other notes, amounting to $37,000, made by the mortgagor, indorsed by the mortgagee, and renewals thereof and interest and any other indebtedness of the mortgagor upon which the mortgagee was liable as indorser or otherwise. It appears further that the debtor gave to defendant, also, a chattel mortgage, dated January 3, 1895, securing the sum of $43,000, conditioned substantially as is the real estate mortgage of same date. No mention of this security is made in the foreclosure bill or in the bill of review. It is averred in the bill of review that, by virtue of the two real estate mortgages and a certain alleged parol agreement, Mr. Noud took possession of the real estate and personal property of said mortgagor described in the bill and operated and managed the same for the purpose of paying from the net proceeds said indebtedness, turning over any remainder to the debtor. With the answer of defendant to the bill of review is a

plea, setting out the proceedings, including the decree in the foreclosure proceedings, with the further averment that the bill of review was filed more than a year after expiration of the time given to appeal from said decree. This plea was overruled.

It is the theory of the bill of review that upon a proper accounting by Noud it would have been made to appear, in the foreclosure proceeding, that a less sum than was claimed, or no sum at all, would have been found to be due. The debtor, John C. Pomeroy, died in December, 1897, at a time when the defendant had for nearly three years managed and directed his business and such property as he had taken possession of. It is averred that complainants, some of whom were and are infants, were, at the time of the foreclosure proceeding, ignorant of the manner in which defendant had managed the property, were financially unable to defend the foreclosure proceedings, were ignorant of business methods, were relying upon the integrity and business ability of defendant—for which reasons the matters now sought to be brought upon the record were not produced in the foreclosure proceedings.

The testimony clearly supports the finding of the circuit judge to the effect that there is nothing now brought upon the record which the defendants, and especially the administratrix, might not have produced in the foreclosure case. They have since learned nothing which they did not then know, unless it is that upon the facts, then and now known, certain legal propositions might have been advanced for the purpose of decreasing the amount which the complainant in the foreclosure proceedings showed to be his due. It is beyond doubt that the business was conducted and the property managed, for the first three years, or thereabouts, with the knowledge of the debtor Pomeroy. Thereafter, from time to time, statements were furnished to the administratrix, which she reviewed, showed to, and talked over with the expert bookkeeper formerly employed by her father, the decedent,

exhibited to the judge of probate and to various friends. The statements were correct statements. The books were properly and honestly kept.

I have no doubt of the power of a court of chancery, after granting leave to file a bill of review, to dismiss the bill at the hearing if it then appears, contrary to the averments of the bill, that there is, in fact, no new matter or no matter which might not have been produced upon the original hearing; this, without considering to what extent, if any, the omitted matter, if produced, might or would have varied the terms of the decree sought to be reviewed. In the case at bar, it is indicated in the opinion filed that not only is there no proper showing made for opening the foreclosure proceedings, but that if the matter had been produced in the foreclosure proceedings no different result would have followed. This court has many times stated the considerations which should affect the granting or refusing of leave to file a bill of review. *Detroit Savings Bank* v. *Truesdail*, 38 Mich. 430, 443; *Sanford* v. *Haines*, 71 Mich. 116; *Sherwood* v. *Savings Bank*, 104 Mich. 65; *Brown* v. *Napper*, 143 Mich. 636, are some of the cases decided. The rules laid down are to some extent founded in considerations of public policy, as well as those of private right.

A consideration of weight in determining whether relief, if otherwise warranted, should be granted in this proceeding, is the one of the relations of defendant Noud to the property in question and to the owners. It is not always that a trustee is permitted to urge, against the strict examination of his accounts, all of the rules of legal warfare governing in purely adversary proceedings. His duty to render an account not only mathematically correct, but equitably fair, and to submit his performances of the trust duties to examination, operates, often, to the advantage of the cestuis que trust, who might be, otherwise, considered to be irretrievably in default. This rule is also one largely of public policy.

This consideration has led to a very careful examina-

tion of the record.   Defendant Noud had never accounted.
No bad faith is attributed to him; but, conceding his
acts and his bookkeeping both to have been honest, and
that he charged no greater sum for interest and no more
for his services than he believed himself entitled to re-
ceive, what he did had never been subjected to the scru-
tiny to which he was bound to submit.   Such scrutiny
implies more than the identification of items and the hon-
esty of the trustee.   It involves the test by the rules of
law.   It appears that no one learned in the law ever ap-
plied himself to an examination of the account of the
trustee until after the foreclosure sale.   No defense was
made in the foreclosure proceedings.   The sale was made
on January 19, 1903, pursuant to decree of September 6,
1902, and petition for leave to file the bill of review was
filed June 23, 1903.   It does not appear that any account-
ing by the trustee was attempted in the foreclosure pro-
ceedings, or that the attention of the court was directed
at all to the fact that the complainant in that suit had for
years conducted the business of the mortgagor.   It does
appear that the guardian ad litem for five infant defend-
ants was present and submitted all questions concerning
the rights of his wards to the court.

In view of the facts and for the reasons given, the court
should proceed to an examination of the case upon the
merits.   There are but two subjects which require atten-
tion.   They are the charges made for services of defend-
ant and the charges for interest.   As to all other matters
of dispute no reason is found for interference.

The record warrants the assumption that the debtor,
Pomeroy, knew of the charges made by Noud for the
years 1895, 1896, 1897 of $1,000 per annum for services,
and from the fact of knowledge ratification and approval
may be found.   After 1897 there was no one who did
in fact assent, and no one who could, by mere im-
plication, be held to have assented, to such a charge.
The facts that the statements which were furnished to the
administratrix showed such a charge, and that no objec-

tion was made thereto, are not sufficient to sustain a charge by agreement. The facts are not like those considered in the case of *Quimby* v. *Uhl,* 130 Mich. 198, cited by counsel for defendant. Should such charges for years subsequent to 1897 be for any reason approved? It is said the charges were reasonable. This may be admitted, if we consider merely the value of the services of defendant in the management of such a business. His position was, however, a voluntary one, assumed in his own interest, and the services were given in securing payment of indebtedness to himself or for which he was liable to others. It is true that there is no imperative rule of law which requires that such services shall be gratuitous.[1] Defendant has, however, charged and received interest upon all the indebtedness, upon that directly paid, to the time of its payment, upon that paid and carried by himself. It is equitable that he should receive interest paid by him, and interest upon the indebtedness owed to himself. He should not receive both interest and salary.

As to the charges for interest: The fact that Mr. Noud, after paying notes of the debtor, charged the amounts thereof in an account, would not operate to render such an account an open account, unliquidated and noninterest bearing. And if, in the conduct of the business, he advanced money as was necessary to purchase material and for labor, such sums so advanced would not be unliquidated items and for that reason noninterest bearing. The difficulty is that in any account of the operation of the business there must appear side by side upon the books of account items of money advanced and also of moneys received. So long as there was no actual application of moneys upon the indebtedness owing to Mr. Noud, the interest upon such indebtedness, including advancements, would continue to run. Mr. Noud kept two accounts; one called "J. C. Pomeroy Special Account," one "P. Noud, Mortgagee." It appears further that the books of

---

[1] But see *Gilluly* v. *Shumway,* 144 Mich. 661, and *Barnard* v. *Patterson,* 137 Mich. 633.—Reporter.

account were continued to August, 1904, and that, as to the indebtedness other than the $11,000 involved in the foreclosure proceeding, interest was charged on open account and on notes. It is not possible for this court to state the account. The record must be remanded and a reference made to a commissioner to take and state an account, upon the testimony produced at the hearing and such other testimony as the parties may introduce. In taking such account, all charges for the services of Mr. Noud, after the year 1897, will be disallowed. He will be credited with all interest paid by him. He will be credited with interest upon all advancements made by him, for any purpose, at the statute rate. He will be allowed interest upon the $11,000 of indebtedness represented by the notes secured by the two mortgages at the rate mentioned in the notes. The actual applications of the proceeds of the business to the indebtedness will be made in the accounting as of the dates they were made by him, in fact, as shown by the books of account, and such accounting will include the period to August, 1904. Defendant Noud will, in any event, in said accounting, be disallowed the item of $220.68 for attorney's fees "after the decree was rendered," less the statutory fee for solicitor, and actual disbursements of a chancery foreclosure, if such charges are included in said item. If it shall be found that nothing is due to defendant, then the entire of said item shall be disallowed. If it shall appear, upon the coming in and confirmation of the account, that there is nothing due to defendant, or, if something being found to be due to him, such sums shall within 60 days after confirmation of said report and account be paid by complainants to defendant, the said decree and all proceedings thereunder shall be set aside and held to be void and of no force or effect. But if (it being claimed by defendant that the property so bid in by him at the foreclosure sale is worth no more than $5,000) said complainants shall not pay to defendant any sum so found to be due to him,

145 MICH.—4

within 30 days after confirmation of said account, said decree and sale shall remain in full force and effect. If defendant has been paid in full, and has in his hands any sum realized from said business or said property, he must pay it to the administratrix of said estate.

The decree below is reversed, and a decree will be entered in this court in conformity with this opinion, remanding the record. Complainants will recover the costs of this appeal.

GRANT, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.