In re MAX SUGARMAN FUNERAL HOME, INC., EMB Associates, Inc., Debtors.

Jason D. MONZACK, Trustee, Plaintiff,

v.

DADE SERVICE COMPANY, ADB Investors, Defendants.

Bankruptcy Nos. 82–00568, 82–00569. Adv. No. 82–0405.

United States Bankruptcy Court, D. Rhode Island.

July 16, 1991.

See also 926 F.2d 1248.

Z. Hershel Smith, DiSandro–Smith & Associates, P.C., Inc., Providence, R.I., for trustee.

David McOsker, Providence, R.I., for Dade Service Co.

Robert Wieck, MacAdams & Wieck, Providence, R.I., for ADB Investors.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the Chapter 11 Trustee's Motion To Adjudge Dade Service Company (Dade) and/or ADB Investors (ADB) in Contempt, for their failure to pay real estate taxes on the property located at 458 Hope Street, Providence, Rhode Island, and known as the Max Sugarman Funeral Home. ADB is the former lessor, and Dade is the former lessee (now a tenant at sufferance) in the subject property, which is owned by the Debtor. Predictably, both Roy Lehrer, president of Dade, and Alan Brier, president of ADB, deny liability, each contending that the other is responsible for the unpaid taxes. Upon consideration of the entire record and the arguments, we conclude, as between the two of them,[1] that Dade Service Company is contractually obligated under its lease with ADB Investors to pay the real estate taxes accrued from April 29, 1982 through April 28, 1987, and that Dade is also responsible for the real estate taxes that have accrued after the lease expired.

The conflict in the evidence regarding the terms of Dade's pre and post-lease occupancy is irreconcilable, and since there are obvious untruths being asserted by either Dade or ADB (or even worse, by both), we are obliged to determine facts from a scenario wherein the credibility of neither party gives the trier of fact much to rely upon. We will do the best we can with what we have.

The relevant facts are as follows: On April 29, 1982, ADB and Dade entered into a five year lease of the subject property, under which Dade agreed to pay monthly rent of $4,166.67, plus utilities, real estate taxes, maintenance, and repairs. ADB and Dade agree that the 1982 lease, as written, is a "triple net" lease, under which the lessee assumes *all* expenses.

Sometime before the 1982 lease expired, Brier drafted a new lease which was to extend from April 29, 1987, through April 28, 1992. ADB's Exhibit 2. Most terms of the proposed lease were similar to those in the 1982 agreement, including the lessee's

---

1. Vis-a-vis the Debtor, Brier and Dade are jointly and severally liable to the Debtor for the real estate taxes (Lehrer's liability stems from our November 18, 1988 modified judgment, and Brier's liability stems from the terms of the Supersedeas Bond he executed) regardless of the outcome of this proceeding. The purpose of this decision is only to resolve a disagreement between Brier and Lehrer, and is a matter in which we gladly would have abstained, except for the fact that the dispute is inextricably intertwined with the administration of the Chapter 11 case.

obligation to pay real estate taxes, but under the new lease the annual rent was to be increased from $50,000 to $55,000 for the first year, with five thousand dollar increases for each succeeding year. Although this new lease was never executed, it is ADB's contention that Dade agreed to, and in fact did continue the tenancy under its terms. ADB suggests that support for its contention is found in a letter dated April 25, 1987, allegedly sent by Roy Lehrer to Alan Brier, which states: "Dade intend[s] to continue to occupy [the] premises at a rental of $4,583.33/mo." ($55,000 annually, triple net). ADB's Exhibit 4. Alan Brier testified that a check for the final rent payment in the amount called for under the old lease was enclosed with the letter, but that thereafter Dade paid rent at the rate set in the proposed new lease. He "could not recall" why the new lease was not executed.

Roy Lehrer categorically denies that he wrote or sent the April 25, 1987 letter, or anything even resembling it. To the contrary, Lehrer testified that it was Dade's specific intention to occupy the premises "not triple net," and that sometime in 1984, because of Dade's declining business and decreasing revenues, he met with Brier and requested that the rent be reduced, but that Brier refused, stating that his partners in ADB would not agree to a rent reduction. Despite Brier's refusal to lower the rent, Lehrer contends, nevertheless, that Brier did agree to assume the real estate taxes. Lehrer maintains that corroboration of this oral lease modification appears in his copy of a letter allegedly sent by him to Brier on January 30, 1985. Dade's Exhibit 2. Lehrer also asserts that he enclosed outstanding real estate tax bills with this letter, which reads "[a]s per the last of our recent meetings, you were to pay the city real estate taxes in lieu of reducing the rent." *Id.* Brier, of course, denies receiving such a letter. With both parties brandishing self-serving letters, each disavowed by the other, one may as well flip a coin on this issue [2]—so we will

refer to other evidence, where the credibility of the parties need not be the basis for our findings and conclusions.

Although in the present proceeding Roy Lehrer is the spokesperson for Dade, the evidence is clear, based on the record in this and prior proceedings in this case, that at the times in question Erwin M. Bosler (and to a lesser degree, his son Louis) managed the day to day business affairs of Dade, and they probably still do. Lehrer, who now lives in New Jersey, conceded that he visited Dade's office only about twice a week, and acknowledged that Erwin Bosler was the principal actor in negotiating the 1982 lease on Dade's behalf. This evidence is actually consistent with Alan Brier's testimony that he dealt mainly with the Boslers between 1982 and 1987. Lehrer also testified that by 1986, "both of the Boslers knew that Brier had agreed to pay the real estate taxes."

## BURDEN OF PROOF

■ The phrase "burden of proof" includes both the burden of "producing evidence, satisfactory to the judge, of a particular fact in issue," and "the burden of persuading the trier of fact that the alleged fact is true." E. Cleary, *McCormick on Evidence* § 336, at 947 (3d ed.1984). "The burdens of producing evidence and of persuasion with regard to any given issue are both generally allocated to the same party," *Id.* at 951, and "there is no key principle governing the apportionment of the burdens of proof." *Id.* at 952. In determining which party has the burden of proof, courts have considered several factors, "including: (1) the natural tendency to place the burdens on the party desiring change, (2) special policy considerations such as those disfavoring certain defenses, (3) convenience, (4) fairness, and (5) the judicial estimate of the probabilities." *Id.* With these factors in mind, we conclude that the burden of proof regarding both the alleged lease modification and the post-

---

**2.** Frankly, we doubt the authenticity of both letters, and base our findings on other evidence, as discussed *infra.*

lease agreement concerning taxes, is with Dade.

 Having said that, we find Roy Lehrer's contention that Brier agreed to assume Dade's real estate tax obligations (both pre and post-lease) to be a fabrication. Such a concession by Brier would be illogical, and totally at odds with the prior established conduct of the parties. Dade's proof, consisting of Roy Lehrer's testimony and the alleged written correspondence between Dade and ADB is inherently suspect, highly improbable, and falls short of meeting Dade's burden on this issue.

Moreover, notwithstanding the fact that Erwin Bosler was in regular contact with Brier, and in spite of Lehrer's assertion that "Bosler knew that Brier had agreed to pay the real estate taxes," Erwin Bosler was not called as a witness to support Dade's position. In response to the Court's specific inquiry on this issue, Dade gave no reason for not calling Bosler,[3] although he certainly was available to testify. Lehrer stated that he spoke with Bosler the night before, and on the very morning of the trial of this proceeding. In any event, Bosler's absence was quite noticeable, and is significant to the Court in these deliberations. "The unexplained failure to call any known non-hostile person who has direct knowledge of facts being developed by the party raises the inference that the testimony would be unfavorable or at least would not support the case." *In re Colonial Bakery, Inc.*, 108 B.R. 13, 15 (Bankr.D.R.I.1989). We draw such an inference herein, against Dade.

Based upon all of the foregoing, we conclude that Dade has failed, both in its effort to show that the 1982 lease was modified, and that it was not responsible for the payment of real estate taxes after the lease expired.[4] We also find that the proposed, though unexecuted, lease evidences the understanding and agreement of the parties (at least as to taxes) from April 29, 1987 (the date on which the 1982 lease

expired) to the present, and that Dade is therefore responsible for all accrued, and future real estate taxes, and is ordered to bring said taxes, interest, and penalties current, forthwith.

Enter Judgment consistent with this opinion.

---

3. In fairness to counsel for Dade, his choices have left him between a rock and a hard place, in light of Erwin Bosler's February 8, 1984 conviction for securities fraud.

4. The evidence is uncontradicted that in May 1987, Dade began paying the higher rent set in the new, proposed lease.