In re Joseph **LITTLE** d/b/a Joe's Sign Shop, Debtor.

Angelo **CAPPELLA**, Plaintiff,

v.

Joseph **LITTLE** d/b/a Joe's Sign Shop, Defendant.

Bankruptcy No. 93–20460.
Adv. No. 93–2070.

United States Bankruptcy Court,
E.D. Michigan, N.D.

Feb. 3, 1994.

---

Kimberly R. Holihan, for plaintiff.

Henry J. Sefcovic, for defendant.

### OPINION ON BURDEN OF PROOF UNDER § 523(a)(4)

ARTHUR J. SPECTOR, Bankruptcy Judge.

On April 29, 1993, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. The Plaintiff was listed in the Debtor's Schedule F as holding an unsecured nonpriority claim. The Plaintiff timely sued the Debtor for a determination that the debt, which was reduced to judgment in state court, is not dischargeable in bankruptcy by virtue of 11 U.S.C. § 523(a)(4).

■ Section 523(a)(4) states in pertinent part that "[a] discharge ... does not discharge an individual debtor from any debt— ... (4) for ... defalcation while acting in a fiduciary capacity." I must refer to non-bankruptcy law in determining whether the Debtor is indebted to the Plaintiff for conduct which constitutes defalcation. *See In re Interstate Agency,* 760 F.2d 121, 124 (6th Cir.1985) (interpreting § 17(a)(4) of the former Bankruptcy Act); *see also Grogan v. Garner,* 498 U.S. 279, 283–84, 111 S.Ct. 654, 657–58, 112 L.Ed.2d 755 (1991); *In re Caldwell,* 111 B.R. 836, 837 (Bankr.C.D.Cal.1990); 4 *Collier on Bankruptcy* ¶ 541.02[1] (15th ed. 1993).[1] In this case, the fact that the Debtor is indebted to the Plaintiff in the amount of $3,451.43 has already been established in state court. The only issue is whether that debt is for defalcation.

At trial, the Plaintiff testified that he had contracted for the Debtor to frame in a cabin on the Plaintiff's premises, that he delivered an advance of $9,000 to the Debtor, and that he paid him more money for additional labor to be performed. The Plaintiff further testified that the job was never completed and that he never got any of his money back.

■ The Plaintiff argued that by virtue of Mich.Comp.Laws § 570.151,[2] the Debtor was a trustee of the funds advanced to him. As a result, he had a duty to expend those funds only for this project; since the project was never completed, he argued, there must either be trust funds remaining in the Debtor's possession or they have been improperly

---

1. In *In re Johnson,* 691 F.2d 249 (6th Cir.1982), the court stated that "[t]he question of who is a fiduciary for purposes of section 17(a)(4) is one of federal law," *id.* at 251, and addressed "the issue of whether, *under federal common law,* some element of intent or bad faith is necessary ... [for purposes] of section 17(a)(4)." *Id.* at 254 (emphasis added). *See also id.* ("Federal, not state, law controls our determination because it is the intent of Congress in using the word 'defalcation' that we seek to discover."). To the extent that *Johnson* meant to suggest that § 17(a)(4)—now § 523(a)(4)—itself creates a cause of action for defalcation, it appears to have been implicitly overruled. *See In re Interstate Agency,* 760 F.2d 121, 124 (6th Cir.1985).

2. This statute, part of the Michigan building contract fund act, provides:

> In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

A person who is a trustee under § 570.151 is a fiduciary for purposes of § 523(a)(4). *See Johnson,* 691 F.2d at 252–53.

spent. Either way, said the Plaintiff, the Debtor must return those funds to him or be liable notwithstanding discharge for defalcation.

The Debtor moved for involuntary dismissal at the close of the Plaintiff's proofs on the ground that the proofs failed to establish a defalcation on the Debtor's part. The Plaintiff argued in response that it was the Debtor's burden to prove that defalcation had not occurred.

Since there may well have been other reasons why the project was not completed, I agreed with the Debtor that the Plaintiff had not proved defalcation. But because neither party presented any convincing support for his view of where the burden of proof rested, I reserved decision on the Debtor's motion and gave the Debtor an opportunity to either present proofs or to rest, standing or falling on his argument regarding location of the burden of proof. To alleviate any concern on the Debtor's part that he might inadvertently strengthen his adversary's case, I emphasized that the Debtor's proofs would not be considered unless his motion for dismissal was ultimately denied. The Debtor chose to present proofs. For the reasons which follow, I conclude that the Debtor had to prove that defalcation did not occur, and that he failed to do so.

■ Michigan courts have repeatedly stated in various contexts that a trustee must account to the beneficiaries for the disposition of trust funds. *See, e.g., In re Estate of Jeffers,* 272 Mich. 127, 138, 261 N.W. 271 (1935) ("It was the duty ... of the trustees of Jeffers' estate to ... account for the rents, income and the profits [derived from the estate property]."); *Burns v. Burns,* 248 Mich. 384, 385, 227 N.W. 671 (1929) ("William, surviving partner, conducting the business, was a trustee, and it was his duty ... to account fully and fairly."); *Pomeroy v. Noud,* 145 Mich. 37, 46, 108 N.W. 498 (1906) (citing the trustee's "duty to render an account [that is] not only mathematically correct, but equitably fair, and to submit his performances of the trust duties to examination"). Failure to properly so account is, by definition, a defalcation. *See, e.g., Citizens Mutual Automobile Ins. Co. v. Gardner,* 315

Mich. 689, 698, 24 N.W.2d 410 (1946); *see also Interstate Agency,* 760 F.2d at 125; *In re Weber,* 99 B.R. 1001, 1012, 19 B.C.D. 205 (Bankr.D.Utah 1989); *Black's Law Dictionary* (5th ed. 1979).

■ It has been stated that "the beneficiary has the initial burden of proving the existence of a fiduciary duty and the trustee's failure to perform it.... [T]he burden then shifts to the trustee ... to prove it acted with ... good faith ... and made full disclosure of all facts related to the transactions at issue." 76 Am.Jur.2d *Trusts* § 688. This arguably implies that the beneficiary must first prove a loss before defalcation can be established, which is irrational because the whole point of requiring an accounting is to permit the beneficiary to determine whether trust funds have been misapplied. *See Loud v. Winchester,* 64 Mich. 23, 26–27, 30 N.W. 896 (1887) ("[I]n an action ... to call persons to an account for the maladministration of a trust, it was not reasonable to require a complainant to set out in his bill the misdoings which he could not be expected to fully understand until he had obtained disclosures."); *Raak v. Raak,* 170 Mich.App. 786, 791, 428 N.W.2d 778 (1988) ("Without an account the beneficiary must be in the dark as to whether there has been a breach of trust and so is prevented as a practical matter from holding the trustee liable for a breach." (quoting Bogert, *The Law of Trusts & Trustees* § 973 (2d ed. rev.))). To the extent a proper account is not made, the beneficiary is entitled to a presumption that he has incurred a loss attributable to the trustee's misconduct. *See Citizens Mutual,* 315 Mich. at 698, 24 N.W.2d 410 ("As the plaintiff's share [of life insurance proceeds] never was paid to him nor turned over to the [decedent's] estate it must be assumed that it was appropriated by the defendant [executor of the decedent's will] to his own use." (citation omitted)); *In re Titsworth's Estates,* 288 Mich. 652, 654, 286 N.W. 97 (1939) ("[T]he duty rests upon a trustee to render proper account, the burden being upon him to establish the correctness of the account. His failure to produce evidence within his control raises the presumption that if produced it would operate against him...."). Thus it is

more accurate to say that the mere failure to account establishes a loss.

■ Since trustees have a duty to account under Michigan law, it is only logical that the Debtor, a statutory trustee, must prove that no defalcation occurred—i.e., that he be required to account for the trust funds he received. This is what he would have had to do in a non-litigation context, and it makes little sense to suggest that he is absolved of that duty when he is sued by the beneficiary. Not surprisingly, then, the Michigan Supreme Court has stated that "[w]here a trustee is called upon in a court of equity to account for the funds received by him as trustee, ... the duty rests upon him to so account, and the burden of proof is upon him to establish the correctness of the account." *Grund v. First Nat'l Bank of Petoskey,* 209 Mich. 613, 615, 177 N.W. 299 (1920). *See also, e.g. Mertz v. Mertz,* 311 Mich. 46, 54, 18 N.W.2d 271 (1945); *Long v. Earle,* 277 Mich. 505, 515, 269 N.W. 577 (1936); *Raak v. Raak,* 170 Mich.App. at 791, 428 N.W.2d 778.[3]

In arguing that the Plaintiff should be required to prove defalcation, the Debtor relied on *James Lumber Company v. J & S Construction,* 107 Mich.App. 793, 309 N.W.2d 925 (1981). There the plaintiff sued J & S and its director, Steve Serges, for the alleged misapplication of funds which, as in this case, the corporate defendant held in trust by virtue of Mich.Comp.Laws § 570.151. The plaintiff obtained a default judgment against J & S, and the only issue before the court was whether "Serges personally received or misapplied the money received [by J & S] or ... knew or approved of any conversion of this money." *Id.* at 795, 309 N.W.2d 925. The Court of Appeals "agree[d] with the trial court that the plaintiff ... has the burden of proof with regard to his claim that ... Serges ... should be held liable under the Michigan building contract fund act." *Id.* The court concluded that the record before it did not establish Serges' liability, explaining:

Under the proofs presented during trial by plaintiff, it is possible that J & S used all money received on these [construction] projects to pay other laborers, subcontractors, and/or materialmen, that J & S did not make a profit on these projects, and that no violation of the act occurred. Plaintiff asks this Court to engage in a presumption of a violation of the act which a defendant contractor must overcome. This we will not do. The burden of proof is on plaintiff to make out his case.... [T]he mere making of allegations by the plaintiff, without producing evidence to support those allegations, is insufficient to make out plaintiff's case.

*Id.* at 796–97, 309 N.W.2d 925. Thus *James Lumber* does support the Debtor's contention that the Plaintiff must substantiate his allegation of defalcation with affirmative evidence that trust funds were misappropriated.

The Plaintiff stressed in response that the defendant in *James Lumber* was a director of the trustee corporation, rather than the corporation itself. It is true that the opinion never characterized Serges as a fiduciary vis-a-vis the plaintiff. And there are indications that the court was more lenient toward Serges than it would have been toward J & S. *See id.* at 795, 309 N.W.2d 925 (noting that the trial court did not find that "Serges personally received or misapplied the [trust] money received or that he knew or approved of any conversion of this money"); *id.* ("The trial court concluded that the director of a construction company could not be held personally liable under MCL 570.151 ... without proof of knowledge or approval of the misuse of the money received by the construction company.").

On the other hand, the court never explicitly stated in *James Lumber* that it attached any significance to the fact that it was Serges personally, rather than the trustee corporation, whom the plaintiff alleged to have vio-

---

3. In each of the cases cited, the plaintiff sued the defendant for an accounting, whereas in this case the Plaintiff simply alleged defalcation without explicitly requesting that the Debtor account for the money paid to him. However, the fundamental issue remains the same—namely, whether the trustee can properly account for the trust funds. Therefore the question of who has the burden of proof should not turn on the fine distinction between a demand for an accounting and an allegation that the trustee has failed to render an accounting. In essence, such an allegation *is* a demand for an accounting.

lated fiduciary duties. Indeed, the court's statement that it would not "engage in a presumption of a violation of the act which a *defendant contractor* must overcome," *id.* at 797, 309 N.W.2d 925 (emphasis added), suggests that it viewed any such distinction as irrelevant.

In any event, even if I assume that *James Lumber* held that a trustee under § 570.151 need not disprove defalcation, I am not bound by that decision if I am "convinced that the highest state court would decide differently." *Olsen v. McFaul*, 843 F.2d 918, 929 (6th Cir.1988) (citation omitted). And for the reasons which follow, I am so convinced.

Section 570.151 makes a contractor subject to that section a trustee with respect to construction funds that he has received. There is no suggestion in the statute that the contractor's duties as such are different or more relaxed than those duties generally imposed on trustees by Michigan law. And as already discussed, the Michigan Supreme Court has consistently recognized that one such general duty is to account to beneficiaries of the trust. I am confident that that court would not carve out an exception to this rule for building contractors. *See, e.g., Raak,* 170 Mich.App. at 791, 428 N.W.2d 778 (suggesting that the notion of a trust without accountability is a contradiction in terms). As a matter both of logic and Michigan case law, this duty to account translates into a burden on the trustee's part to demonstrate in court that trust funds have been properly applied.[4] I therefore conclude that the Michigan Supreme Court would hold that a contractor bears the burden of proving that he did not defalcate funds received in trust pursuant to § 570.151.

■ Although the Debtor did not so argue, a few courts have stated or implied that federal, and not state law governs allocation of the burden of proof in dischargeability cases. *See, e.g., In re Fitzgerald,* 109 B.R. 893, 900 (Bankr.N.D.Ind.1989); *In re Whitehouse,* 26 B.R. 239, 242 (Bankr.W.D.Ky. 1982); *In re Barlick,* 1 B.C.D. 412, 414 (Bankr.D.R.I.1974) (interpreting § 17 of the

former Bankruptcy Act). A rationale offered for this conclusion is that the discharge of debts is a "federally created right." *Barlick,* 1 B.C.D. at 416. But the exceptions to discharge under § 523(a) presuppose that there is a debt owed. And it is now fairly well established that liability for defalcation must be based on substantive law other than § 523(a)(4). *See supra* n. 1 and accompanying text. Thus the reasoning in *Barlick* is pertinent only when that "other law" is federal, which is not the case here.

■ The question of who bears the burden of proof is generally considered to be substantive. *See, e.g., Dick v. New York Life Ins. Co.,* 359 U.S. 437, 446, 79 S.Ct. 921, 927, 3 L.Ed.2d 935 (1959); *Putnam Resources v. Pateman,* 958 F.2d 448, 465 (1st Cir.1992) ("[B]urdens of proof [are] ... most often treated as substantive." (quoting 1 Wigmore, *Evidence* § 5 at 358 n. 11 (Tillers rev. 1983)); *Blue Diamond Coal Co. v. United Mine Workers of America,* 436 F.2d 551, 563 (6th Cir.1970), *cert. denied,* 402 U.S. 930, 91 S.Ct. 1525, 28 L.Ed.2d 863 (1971); Wright & Miller, *Federal Practice and Procedure:* Civil § 2409 (describing rules concerning the burden of proof as being "closely associated with substantive rights" and stating that "[t]he courts regard burden of proof as a matter of substance"). This rule is particularly appropriate here, given the clearly substantive requirement under Michigan law that trustees account to their beneficiaries. *See Pomeroy,* 145 Mich. at 46, 108 N.W. 498 (describing the duty-to-account rule as "one largely of public policy"); *Raak,* 170 Mich. App. at 791, 428 N.W.2d 778 (likewise noting the public policy concerns underlying the imposition of a duty to account). I therefore believe that the question before me is determined by state law. *See In re McLaughlin Farms,* 120 B.R. 493, 503 (Bankr.N.D.Iowa 1990) ("As a substantive matter, burden of proof is ... governed by state law."); *In re Noroton Heights Enters. Corp.,* 96 B.R. 11, 15 (Bankr.D.Conn.1989) ("The substantive question of who has the *burden of proof* on a given matter is determined by state

---

**4.** *James Lumber* does not undermine this conclusion because the court did not even acknowledge that trustees generally have a duty to account, let alone attempt to reconcile that duty with its holding.

law...."). And for the reasons stated, I conclude that Michigan law dictates that the Debtor prove he did not commit a defalcation.

■ I would reach the same conclusion under *federal common law.* First and foremost, requiring that the Debtor prove he is not guilty of defalcation has the virtue of being consistent with Michigan law and, in particular, assuring that a trustee cannot frustrate legitimate public policy in this state by filing bankruptcy. *See In re Max Sugarman Funeral Home,* 130 B.R. 119, 121 (Bankr.D.R.I.1991) (stating that one of the relevant factors in assigning the burden of proof is any "special policy considerations" (quoting *McCormick on Evidence* § 336 (3d ed. 1984)).

Another consideration militating in the Plaintiff's favor is that it would likely be easier for the Debtor to prove that the funds were properly spent than for the Plaintiff to prove that they were not. *See, e.g., United States v. Negron,* 967 F.2d 68, 72 (2d Cir. 1992) (citing 9 J. Wigmore *Evidence* at 2485–86 (3d ed. 1940) for the proposition that the "party with an affirmative goal and presumptive access to proof on a given issue normally has [the] burden of proof as to that issue"); *Sugarman,* 130 B.R. at 121 (indicating that the factors relevant to the question of which party has the burden of proof include "convenience" and "fairness" (quoting *McCormick on Evidence* § 336 (3d ed. 1984))); *cf., e.g.,* F.R.Civ.P. 8(c) (designating "payment" as an affirmative defense); 29 Am.Jur.2d *Evidence* § 129 ("The burden of proof is upon the defendant as to all affirmative defenses....").[5]

Nor does there exist any compelling reason why it would be inappropriate to require the Debtor to account for the trust funds. Such an approach does not substantially undermine bankruptcy's "fresh start" policy because the beneficiary must as a preliminary matter establish that the debtor did in fact receive funds in a fiduciary capacity. *See In re Manzo,* 106 B.R. 69, 72–73 (Bankr.E.D.Pa. 1989) (Twardowski, J.) ("Once the plaintiff establishes that the trust res was delivered to the fiduciary, the burden shifts to the debtor to show that no defalcation occurred."); *In re Borbidge,* 90 B.R. 728, 736–37 (Bankr.E.D.Pa.1988) (Fox, J.), *aff'd,* 114 B.R. 63 (E.D.Pa.1990) ("[A] plaintiff proceeding under section 523(a)(4) carries his burden to establish defalcation ... where he shows that funds from the trust res came to be directly paid to the trustee. The burden then shifts to the trustee to establish that the assets received by him ... were actually used for the benefit of the intended beneficiary of the trust...."); *Grund,* 209 Mich. at 615, 177 N.W. 299 ("[T]he burden is upon the plaintiff to establish the trust relation ... before he casts upon the defendant the burden of an accounting.").[6]

On balance, then, it makes more sense to require a trustee to prove that trust funds were properly applied than to require a beneficiary to prove that they were misapplied. *See Manzo,* 106 B.R. at 72–73; *Borbidge,* 90 B.R. at 736–37. *But see, e.g., In re Stone,* 91 B.R. 589, 594 (D.Utah 1988); *In re Chapman,* 125 B.R. 284, 286–87 (Bankr.S.D.Cal. 1991) ("To prevail in a § 523(a)(4) action, the creditor must establish that ... a defalcation occurred."); *In re Pieper,* 119 B.R. 837, 840 (Bankr.M.D.Fla.1990); *In re Peters,* 90 B.R. 588, 605 (Bankr.N.D.N.Y.1988). Thus even if state law is not controlling on the issue, the Debtor should still bear the burden of proving that he did not commit a defalcation. His motion for involuntary dismissal will therefore be denied.

■ Having determined that it was incumbent upon the Debtor to disprove defal-

---

5. Analogy to the defense of payment is appropriate because in accounting for trust funds that were under his control, the Debtor essentially must show that all payments he made with these funds were proper, and pay the balance of the funds, if any, to the Plaintiff. *See Black's Law Dictionary* (5th ed. 1979) (The term "account for" means "[t]o pay over the money to the person entitled thereto.").

6. In this regard, it should be noted that there is no rule which, as in the case of objections to discharge, *see* F.R.Bankr.P. 4005, imposes the burden of proof on creditors in actions brought under § 523(a). This suggests by negative inference that the debtor may sometimes be *required* to shoulder that burden in defending such actions.

cation, I must consider the proofs which he submitted regarding this issue. One might expect that the Debtor would attempt to show, for example, that he simply underestimated the cost of completing the project, and that all funds received from the Plaintiff were in fact spent on the project. But he made no such attempt; the Debtor's proofs—consisting solely of his own testimony—were entirely irrelevant. Because the Debtor failed to account for the trust funds, judgment will enter in favor of the Plaintiff for the full amount of the indebtedness.[7]

---

7. As a general rule, the debtor is barred by collateral estoppel from relitigating the amount of a debt alleged to be nondischargeable. *See, e.g., In Re Canganelli,* 132 B.R. 369, 385–88 (Bankr.N.D.Ind.1991); *In re Schmit,* 71 B.R. 587, 588 n. 1 (Bankr.D.Minn.1987); *In re Brown,* 56 B.R. 954, 959 (Bankr.E.D.Mich.1986). This case presents an exception because it is possible that all or some portion of the debt as determined by the state court may simply reflect the cost to the Plaintiff of completing the project, rather than defalcation by the Debtor. Since the Debtor did not claim otherwise, however, I assume that the Plaintiff's loss attributable to the defalcation is equal to the entire amount of the debt.