In re John J. NESTOR, Jr., Debtor.

Robert F. TUCKER, Appellant,

v.

John J. NESTOR, Jr., Appellee.

Civ. A. No. 94–10617–MEL.

United States District Court,
D. Massachusetts.

Oct. 16, 1996.

George E. Richardson, Johnson & Clapp, Boston, MA, for Appellant.

John N. Nestor, Law Office of John N. Nestor, Benjamin Tessler, Lynn, MA, for Appellee.

LASKER, District Judge.

This is an appeal by Robert Tucker from a final judgment of an adversary proceeding in the United States Bankruptcy Court for the District of Massachusetts. Tucker, the plaintiff below, appeals from the decision of the bankruptcy court holding that the debt owed him by John Nestor, Jr., the defendant and debtor, was not excepted from discharge as a debt for defalcation while acting in a fiduciary capacity. The decision of the bankruptcy court is affirmed.

## I.

On April 25, 1986, Nestor and Tucker, friends from high school who had stayed in touch while working for the city of Lynn, Massachusetts, entered into a limited partnership agreement. Nestor, who was then running a consulting and real estate management business, became the general partner and Tucker became one of five limited partners, each of whom invested $30,000 in the joint endeavor. The agreement set forth the primary purpose of the partnership as investment in and management of "income-producing real estate which is improved or which will be improved within a reasonable period after acquisition."

As general partner, Nestor had sole responsibility for acquisition, management and disposition of partnership properties. The partnership agreement specified that Nestor would have a "fiduciary" responsibility for the safekeeping and use of all partnership funds, and obliged Nestor to prepare quarterly financial reports which were to be distributed to the limited partners on an annual basis.

The partnership was originally established for a two-year term. During that period, Nestor made three major investments on behalf of the partnership, purchasing a condominium in Danvers, Massachusetts, and parcels of land in Boxford and Hamilton, Massachusetts. The latter two purchases were made within two months of the date on which the partnership was to expire. Nestor obtained permits and architectural plans to build single-family houses on these lots, but was unable to secure the construction financing necessary to build on the properties. On June 7, 1988, after Nestor explained that he needed additional time to have a chance of recouping extensive investment losses which seemed imminent, Tucker and Nestor signed an extension of the partnership agreement providing for the "speedy" sale and distribution of all partnership assets. Nestor was ultimately unable to return Tucker's investment, however, since banks foreclosed on all of the partnership properties in mid–1989.

Nestor filed for bankruptcy in 1990, and Tucker then sought an "exception" from discharge pursuant to 11 U.S.C. § 523(a)(4) on the grounds that Nestor had committed "defalcation while acting in a fiduciary capacity." Tucker alleged that Nestor failed to fulfill his obligation to provide financial reports to his partners. Tucker also argued that Nestor's purchase of real estate in what were to have been the final months of the partnership was so reckless and imprudent as to constitute a defalcation making Nestor's debt to Tucker nondischargeable. Finally, Tucker claimed that Nestor had left the limited partners open to potential liability by failing to file a limited partnership certificate with the Commonwealth.

The bankruptcy court found that Nestor's failure to satisfy his accounting obligations constituted a defalcation while acting in a fiduciary capacity, but held that the defalcation was not the cause of Tucker's loss and accordingly did not except the debt from discharge. The bankruptcy court found that Tucker's losses, and those of the partnership, were caused by the collapse of the real estate market. The bankruptcy court did not directly discuss Tucker's other allegations, but stated only that it "did not find that the Debtor had in any sense misused, misappropriated, or failed to produce funds entrusted to him." *In re Nestor*, Adv. No. A90–1257 (Bankr.D.Mass. Feb. 3, 1994).

## II.

Tucker argues that it was error for the bankruptcy court to hold, despite its finding that Nestor was guilty of defalcation, that the defalcation did not give rise to a nondischargeable debt. Tucker contends further that Nestor's purchase of real estate near the termination date of the partnership and his failure to file a certificate of limited partnership each constituted a defalcation sufficient to justify denying Nestor a discharge.

Nestor's response on appeal is limited: he asserts that his failure to furnish the partners with reports in the specified form was only a minor breach of his fiduciary duty. Moreover, relying on the bankruptcy court's finding, he argues that this breach of duty did not cause Tucker's investment losses and that the debt is therefore dischargeable.

## III.

Section 523(a)(4) of the Bankruptcy Code excepts from discharge "any debt ... for ... defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4).

In the case at hand, there is no question raised as to the existence of a fiduciary relationship. Nestor does not challenge the bankruptcy court's holding that, as general partner, he was acting in a fiduciary capacity with respect to his limited partners. Nor is there any question that Nestor was obliged to, and failed to, issue annual financial reports to his partners.

■■■ The questions raised in this appeal are whether this failure constituted a defalcation, and, if so, whether the debt Nestor owes Tucker is nondischargeable "for" that defalcation. On appeal, the bankruptcy court's factual findings and conclusions as to mixed questions of fact and law are binding unless clearly erroneous; conclusions of law are reviewed under a de novo standard. *In re A.J. Lane & Co.*, 171 B.R. 1, 2 (D.Mass.1994); *see In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d 440, 447 (1st Cir.1986). The bankruptcy court's interpretation of § 523(a)(4) presents a question of law and is accordingly reviewed de novo. The bankruptcy court's determination of facts and its application of the statute to the facts so found are subject to the clearly erroneous standard.

■■■ The failure properly to account for money or property entrusted to one constitutes "defalcation" within the meaning of § 523(a)(4). *In re Daniels*, 1994 WL 470213, *6 (Bankr.D.Mass. Apr. 25, 1994). A fiduciary who can neither produce funds held in trust nor satisfactorily explain his inability to do so is guilty of defalcation. *In re Silba*, 170 B.R. 195, 202 (Bankr.E.D.N.Y.1994) (failure to produce trust assets "without explanation" was defalcation); *In re Cairone*, 12 B.R. 60, 63 (Bankr.D.R.I.1981) ("unexplained failure" to remit funds received in a fiduciary capacity was defalcation).

In the case at hand, the bankruptcy court found that Nestor furnished a legitimate explanation for his failure to return Tucker's investment: the partnership's losses were due to the collapse of the real estate market and the fact that banks could not, or would not, finance real estate purchases or construction.

Although it would have been helpful for the bankruptcy court to make more complete findings in support of this conclusion, the record below provides a basis for the bankruptcy court's finding. Nestor testified, and one of the limited partners acknowledged, that he produced all the partnership's checks and financial records during discovery. Nestor also testified that he provided oral reports to the limited partners throughout the life of the partnership detailing the course of his investments and their failures. This, coupled with Nestor's explanation at trial of the troubled demise of the partnership in a harsh real estate market, supports the bankruptcy court's finding that the failure to file formal reports did not cause the partnership's losses.

While the bankruptcy court's ultimate conclusion as to the debt's dischargeability is correct, its decision that Nestor committed a defalcation is far less clear. As we read the cases on defalcation, accounting for funds means producing them or adequately explaining their loss. Accordingly, the bankruptcy court's finding that Nestor satisfactorily explained the dissipation of the partnership

assets indicates that he committed no defalcation, since he accounted for the funds entrusted to him. While Tucker attempts to broaden the definition of defalcation to include the failure to satisfy specific accounting obligations, none of the cases he cites support this expanded definition. Each case he cites in which a debt was held nondischargeable is one in which the debtor either misused funds held in a fiduciary capacity or could not give a satisfactory explanation of his inability to produce such funds. *E.g., In re Carroll*, 140 B.R. 313, 316 (Bankr.D.Mass. 1992) (debtor applied money contrary to the terms of an escrow agreement); *In re Duttenhofer*, 12 B.R. 926, 929 (Bankr.C.D.Cal. 1981) (debtor could not explain what he had done with money entrusted to him for investments).

■ However, even if Nestor's failure to satisfy his accounting and reporting obligations is considered a defalcation, the bankruptcy court's holding was nevertheless justified. Section 523(a)(4) excepts from discharge "any debt ... *for* ... defalcation while acting in a fiduciary capacity" (emphasis added). Under this provision, a debt must *arise from* a debtor's defalcation for the defalcation to render the debt nondischargeable. *See In re Boudakian*, 137 B.R. 89, 94 (Bankr.D.R.I.1992) (the merest deficit *caused by* the debtor's misconduct may be a defalcation); *In re Shane*, 140 B.R. 964, 967 (Bankr.N.D.Ohio 1991) (a deficit *resulting from* the debtor's ignorance, negligence, and/or misconduct constitutes defalcation). Here, the bankruptcy court found that Tucker did not establish either that Nestor failed to account for the loss suffered or that the loss was attributable to Nestor's misconduct.

Tucker argues that Nestor's failure to file the required accounting reports is itself sufficient harm to render Nestor's debt nondischargeable. He cites *In re Little*, 163 B.R. 497 (Bankr.E.D.Mich.1994) to bolster his claim that since a creditor who has not received an accounting cannot, by the very nature of the situation, demonstrate the cause of his loss, the fiduciary's mere failure to account is sufficient to establish the loss. However, the rationale of the *Little* court is inapplicable here. In that case, the debtor gave no explanation of how he had used funds entrusted to him. The court therefore granted the beneficiary of the trust "a presumption that he has incurred a loss attributable to the trustee's misconduct." 163 B.R. at 500. A presumption is unwarranted in the present case, however, because the bankruptcy court found that Nestor fully explained the application of partnership funds and that the loss was due to the crash of the real estate market, rather than to Nestor's misconduct. Moreover, the *Little* court applied its presumption out of concern with what the debtor could prove *in court* rather than with whether the debtor had fulfilled specific accounting obligations prior to bankruptcy. 163 B.R. at 502. Since Tucker's primary challenge is to Nestor's failure, during the life of the partnership, to meet obligations set forth in the partnership agreement, the *Little* presumption does not come into play.

Furthermore, since the partnership agreement did not allow the limited partners to direct the actions of the general partner or to demand the return of their investment, Tucker would have been in exactly the same financial position had Nestor filed the required reports.

Tucker argues next that Nestor's purchase of real estate in a troubled market near the termination date of the partnership was reckless and inappropriate and thus amounted to a defalcation. The bankruptcy court did not address this contention directly, but implicitly rejected the argument in finding that Tucker failed to establish that Nestor had misused the partnership funds in any way.

It was not clearly erroneous for the bankruptcy court to find that Tucker did not establish that Nestor had misused partnership funds. Nestor's purchases took place while the partnership agreement was in effect, and, contrary to Tucker's claim, the purchases were permitted by Nestor's broad authority under that agreement. The agreement provided that the partnership could "enter into ventures, partnerships, and other business arrangements with respect to real estate deemed prudent by the General Partner." Nestor testified that he believed a drastically changed market made it more

prudent to invest in building and selling single-family homes than to remain in the condominium market. Tucker's reliance on *In re Misiaszek*, 162 B.R. 80 (Bankr.D.N.H. 1993) is misplaced. There the court found a debtor had committed a defalcation by investing in unsecured loans in violation of clear statutory restrictions. 162 B.R. at 82. Here Nestor had full authority under the partnership agreement to make the investments he did, and accordingly the purchases do not represent misconduct which make the debt nondischargeable.

■ Tucker's final argument is based on Nestor's failure to file a certificate of limited partnership with the Commonwealth of Massachusetts. Without citing precedent, Tucker contends that this failure should be considered a defalcation since it left him open to potential suits by those having claims against the partnership. Because there is no allegation that anyone has sought to bring such a claim against Tucker, the claim may well be moot. In any event, failure to file a certificate of partnership does not satisfy the customary definition of a defalcation: it does not constitute the misuse of or failure to account for partnership funds.

### IV.

■ Nestor moves for an award of counsel fees and costs. As the prevailing party, he is entitled to costs. He is not entitled to attorney's fees, however, since Tucker's appeal raises questions that are far from frivolous. Given Tucker's admitted failure to fulfill his obligation to file accounts as required by the partnership agreement, the paucity of fact-finding by the bankruptcy court, and the lack of clarity in the law of defalcation, it was justifiable for Tucker to pursue this appeal.

\* \* \*

For the foregoing reasons, the decision of the bankruptcy court is affirmed.

It is so ordered.